**I & JC CORP. and Bayside Brush Co. d/b/a Camila Paris, Appellants,**

v.

**HELEN OF TROY L.P., Appellee.**

No. 08–04–00110–CV.

Court of Appeals of Texas, El Paso.

May 26, 2005.

9. *See* note 4.

■ 881

Rene Ordonez, Delgado, Acosta, Braden
& Jones, P.C., El Paso, for Appellants.

R. Wayne Pritchard, Ray, Valdez, McChristian & Jeans, P.C., El Paso, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## OPINION

RICHARD BARAJAS, Chief Justice.

This is an appeal from the trial court's denial of special appearance motions decided against Appellants. For the reasons stated herein, we affirm the trial court's finding that jurisdiction in Texas is appropriate.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant I & JC Corp. is a Florida corporation originally incorporated for the business of retail sales of women's hair accessories. Appellant Bayside Brush Co. was subsequently created to focus on retail sales of hair accessories and I & JC transferred its focus to the wholesale distribution of hair accessories. Appellant corporations are separate corporate entities though they share officers and directors and have a close business relationship.

Appellee, Helen of Troy L.P. is a limited Texas partnership in the business of supplying many types of hair and beauty products under various brand names. During the late 1990's, Appellants had a business relationship with the supplier of Karina products. Appellee acquired Karina in 1999. After the acquisition of Karina, the parties continued to do business but Appellants contend that the terms and conditions for the placement of orders for products and purchases was changed. A short time after the purchase, the relationship ended over a dispute about the credit arrangement between the parties. Appellants were in possession of several thousand dollars worth of hair products which

they offered to return for credit. Appellee refused the return and demanded payment. Appellants deny that they owe any money for the merchandise and that their only obligation is to return the products.

Subsequent to the end of the relationship, Appellants began marketing substantially similar hair products under the name Camila Paris using what Appellee contends is the "trade dress" [1] being used by Appellee for Karina products. Appellee also contends that Appellants have begun using, without permission, the name "Karina," on the meta tags [2] of their active website. Appellants have sold, and continue to sell, products both in Texas and across the nation, using the Camila Paris label which Appellee contends is a trade dress infringement. Appellee sued Appellants in El Paso, Texas alleging violations of the Karina trademark and trade dress protection, unfair competition, violation of the Texas Business and Commerce Code, a breach of contract, requesting a declaratory judgment, and requesting injunctive relief. Each Appellant filed a Special Appearance challenging jurisdiction of the Texas courts. Appellee's response to the special appearances asserted five grounds for establishing jurisdiction over Appellants: (1) breach of contract, (2) trade dress infringement, (3) trademark infringement, (4) interactive websites, and (5) alter ego.

After a hearing on the special appearances, the trial court entered an order denying the special appearances. Appellants filed a Motion for Entry of Findings of Fact and Conclusions of Law. Plaintiff and Defendants filed Proposed Findings of Fact and Conclusions of Law. The trial court did not file findings of fact or conclusions of law and Appellants did not file a notice of past due findings of fact and conclusions of law.

Appellants filed a Notice of Interlocutory Appeal and assert six issues.

## II. ISSUES ON APPEAL

In six issues, Appellants challenge the court's denial of their special appearance. In Issues One through Four, Appellants complain that the trial court erred in finding specific and general jurisdiction as to each Appellant respectively. Issue Five complains that the trial court erred in finding that Appellant Bayside was the alter ego of I & JC in submitting each to jurisdiction because of the minimum contacts of each company. Issue Six complains generally that the trial court's finding of jurisdiction violates traditional notions of fair play and substantial justice.

We read these issues collectively as a challenge to the trial court's implied findings of fact and conclusions of law that there is sufficient evidence to subject both Appellants to the jurisdiction of Texas courts on the grounds of minimum contacts, commission of a tort, and alter ego, as a matter of law. Stated in the alternative, we read Appellants' complaints as a challenge that there is no or insufficient

---

1. "Trade Dress" is a term used to describe the "overall appearance and image in the marketplace of a product or a commercial enterprise. For a product, trade dress typically comprises packaging and labeling. For an enterprise, it typically comprises design and decor. If a trade dress is distinctive and nonfunctional, it may be protected under trademark law." BLACK'S LAW DICTIONARY 1500 (7th ed.1999).

2. A meta tag is an item that is contained on a website. Some search engines examine meta tags to index information about web pages such as subject matter, type of content and author and direct users to a particular website. See Horphag Research Ltd. v. Pellegrini, 337 F.3d 1036, 1039 n. 2 (9th Cir.2003).

evidence to support the trial court's decision finding jurisdiction and denying the special appearance.

## III. STANDARD OF REVIEW

■ A trial court's order granting or denying a special appearance under Tex.R. Civ. P. 120a is appealable as an interlocutory appeal. Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(7) (Vernon Supp.2004–05). The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute. See McKanna v. Edgar, 388 S.W.2d 927, 930 (Tex.1965). The special appearance procedure requires that a defendant challenging a Texas court's personal jurisdiction over it must negate all jurisdictional bases. American Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex.2002); Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex.1985). Once a plaintiff has properly plead sufficient jurisdictional facts, a defendant must present evidence to rebut the jurisdictional allegations asserted because the burden has shifted. Further, a plaintiff may present evidence of jurisdictional facts at the hearing on the special appearance. See Zimmerman v. Glacier Guides, Inc., 151 S.W.3d 700, 704 (Tex.App.-Waco 2004, no pet.).

■ Whether a court has personal jurisdiction over a defendant is a question of law. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex.2002). The trial court, however, frequently must resolve questions of fact before deciding the jurisdiction question. Id. If a trial court enters an order denying a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds. Id.; see Hotel Partners v. KPMG Peat

Marwick, 847 S.W.2d 630, 632 (Tex.App.-Dallas 1993, writ denied). The courts of appeals may review the fact findings for both legal and factual sufficiency. BMC Software Belgium, N.V., 83 S.W.3d at 794; Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).

■ Appellate courts review a trial court's conclusions of law as a legal question. Hitzelberger v. Samedan Oil Corp., 948 S.W.2d 497, 503 (Tex.App.-Waco 1997, pet. denied). The appellant may not challenge a trial court's conclusions of law for factual insufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness. Templeton v. Dreiss, 961 S.W.2d 645, 656 n. 8 (Tex.App.-San Antonio 1998, pet. denied); Dallas County v. Sweitzer, 881 S.W.2d 757, 763 (Tex.App.-Dallas 1994, writ denied). If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal. Scholz v. Heath, 642 S.W.2d 554, 559 (Tex. App.-Waco 1982, no writ).

■ When a trial court rules on a special appearance, the losing party should request findings of fact and conclusions of law. Tex.R. Civ. P. 296; Daimler–Benz Aktiengesellschaft v. Olson, 21 S.W.3d 707, 715 (Tex.App.-Austin 2000, pet. dism'd w.o.j.), cert. denied, 535 U.S. 1077, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002). When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. BMC Software Belgium, N.V., 83 S.W.3d at 795; see Worford v. Stamper, 801 S.W.2d 108, 109 (Tex.1990); Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987); In re W.E.R., 669 S.W.2d 716, 717 (Tex.1984). When the appellate record in-

cludes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *BMC Software Belgium, N.V.*, 83 S.W.3d at 795; *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989); *Zac Smith & Co.*, 734 S.W.2d at 666. When such points are raised, the standard of review to be applied is the same as that to be applied in the review of jury findings or a trial court's findings of fact. *Roberson*, 768 S.W.2d at 281. For legal sufficiency points, if there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *BMC Software Belgium, N.V.*, 83 S.W.3d at 795; *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992).

■■■■■■ We will set aside a finding of the trial court only if the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Runnells v. Firestone*, 746 S.W.2d 845, 849 (Tex.App.-Houston [14th Dist.] 1988, writ denied). In reviewing such a point of error, we must consider and weigh all of the evidence, both the evidence that tends to prove the existence of a vital fact as well as evidence that tends to disprove its existence. *See In re King's Estate*, 244 S.W.2d at 665; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). In considering the evidence, if a finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the finding should be set aside, regardless of whether some evidence supports it. *Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate*, 244 S.W.2d at 661.

■■■■■■ If evidence supports the implied findings of fact, we must uphold the trial court's judgment on any legal theory supported by the findings. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex.1990); *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75–76 (Tex.App.-Austin 2001, pet. denied); *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex.1987); *Runnells*, 746 S.W.2d at 848. This is so regardless of whether the trial court articulates the correct legal reason for the judgment. *Harrington v. Railroad Comm'n*, 375 S.W.2d 892, 895 (Tex.1964); *Goodenbour*, 64 S.W.3d at 76; *Fish v. Tandy Corp.*, 948 S.W.2d 886, 892 (Tex.App.-Fort Worth 1997, writ denied); *Marifarms Oil & Gas, Inc. v. Westhoff*, 802 S.W.2d 123, 125 (Tex. App.-Fort Worth 1991, no writ). We review the legal conclusions supporting the judgment to determine whether they are correct as a matter of law. *Goodenbour*, 64 S.W.3d at 76; *Lawrence v. Kohl*, 853 S.W.2d 697, 699 (Tex.App.-Houston [1st Dist.] 1993, no writ).

Although findings of fact are not required, *see* Tex.R.App. P. 28.1, if the trial court does not file findings of fact in a case challenging a special appearance, all questions of fact are presumed to support the judgment. *Michiana Easy Livin' Country Inc. v. Holten*, 127 S.W.3d 89, 94 (Tex. App.-Houston [1st Dist.] 2003, pet. granted); *Ace Ins. Co. v. Zurich Am. Ins. Co.*, 59 S.W.3d 424, 427 (Tex.App.-Houston [1st Dist.] 2001, pet. denied).

Further, the losing party is required to bring the trial court's failure to the attention of the trial court. Texas Rule of Civil Procedure 297 provides, in part, the following:

If the court fails to file timely findings of fact and conclusions of law, the party making the request shall, within thirty days after filing the original request, file with the clerk and serve on all other parties in accordance with Rule 21a a "Notice of Past Due Findings of Fact and Conclusions of Law" which shall be

immediately called to the attention of the court by the clerk. Such notice shall state the date the original request was filed and the date the findings and conclusions were due.

Tex.R. Civ. P. 297.

■ The failure to file a notice of past due findings of fact waives the right to complain about the trial court's failure to file findings of fact and conclusions of law. *See Curtis v. Commission for Lawyer Discipline,* 20 S.W.3d 227, 232 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Las Vegas Pecan & Cattle Co. v. Zavala County,* 682 S.W.2d 254, 255 (Tex.1984). No such notice appears in the record of this case. Although the record shows that each party filed Proposed Findings of Fact and Conclusions of Law and Appellants noted in their Notice of Interlocutory Appeal that "Appellants timely filed a request for findings of fact and conclusions of law, which the trial court has yet to file" they did not file the Notice required by Rule 297 of the Texas Rules of Civil Procedure. *See* Tex.R. Civ. P. 297.

■ If the appellant does not challenge the trial court's findings of fact, when filed, these facts are binding upon both the party and the appellate court. *Wade v. Anderson,* 602 S.W.2d 347, 349 (Tex.Civ. App.-Beaumont 1980, writ ref'd n.r.e.). Accordingly, it is incumbent for the appellant to attack the findings by appropriate legal and factual sufficiency points of error. *Lovejoy v. Lillie,* 569 S.W.2d 501, 504 (Tex.Civ.App.-Tyler 1978, writ ref'd n.r.e.).

It would have been helpful for the court to have articulated its findings of facts and conclusions of law but because no findings of fact or conclusions of law were filed in this case, we will presume that the trial court found all necessary facts to support the judgment. After review of the appellate record, however, we determine that there is ample evidence to support the trial court's implied findings and its implied findings are not against the great weight and preponderance of the evidence.

## IV. *PERSONAL JURISDICTION–THE TEXAS LONG–ARM STATUTE*

A Texas court may assert personal jurisdiction over a non-resident defendant only if the requirements of both the Texas long-arm statute and the United States Constitution are satisfied. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 17.041–.045 (Vernon 1997 and Supp.2004–05); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984); *CSR, Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996). A non-resident does business in Texas if it:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1997).

■ In addition, the statute provides that "other acts" by the non-resident can satisfy the requirement of "doing business" in Texas. *Id.; Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex. 1991). The Texas Supreme Court has interpreted this broad statutory language to reach as far as the federal constitutional requirements of due process will permit. *BMC Software Belgium, N.V.,* 83 S.W.3d at 795. Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction com-

ports with federal due process limitations. *CSR, Ltd.*, 925 S.W.2d at 594.

 Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). A nonresident defendant that has "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (discussing the constitutional boundaries of personal jurisdiction). Although not determinative, foreseeability is an important consideration in deciding whether the nonresident defendant has purposefully established "minimum contacts" with the forum state. *Guardian Royal*, 815 S.W.2d at 227. A defendant, however, should not be subject to a foreign court's jurisdiction based upon "random," "fortuitous," or "attenuated" contacts. *Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183.

## A. Minimum Contacts

 Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *Helicopteros Nacionales de Colombia, S.A.*, 466 U.S. at 413–14, 104 S.Ct. at 1871–72; *BMC Software Belgium, N.V.*, 83 S.W.3d at 795; *Guardian Royal*, 815 S.W.2d at 226. Specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *BMC Software Belgium, N.V.*, 83 S.W.3d at 796; *Guardian Royal*, 815

S.W.2d at 227. In contrast, general jurisdiction is present when a defendant's contacts in a forum are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *BMC Software Belgium, N.V.*, 83 S.W.3d at 796; *Guardian Royal*, 815 S.W.2d at 228; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). Therefore, we must determine that there are either minimum contacts sufficient to confer specific jurisdiction or continuous and systematic contacts sufficient to confer general jurisdiction.

 To establish specific jurisdiction, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state, and the conduct must have resulted from that defendant's purposeful conduct, not the unilateral conduct of the plaintiff or others. *TeleVentures, Inc. v. International Game Technology*, 12 S.W.3d 900, 907 (Tex.App.-Austin 2000, pet. denied). Thus, in analyzing minimum contacts for the purpose of determining Texas courts' specific jurisdiction, we focus on the relationship among the defendant, the forum, and the litigation. *Id.* at 908; *Michiana Easy Livin' Country Inc.*, 127 S.W.3d at 96; *Blair Communications, Inc. v. SES Survey Equip. Services, Inc.*, 80 S.W.3d 723, 727 (Tex.App.-Houston [1st Dist.] 2002, no pet.); *Memorial Hosp. System v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 650 (Tex.App.-Houston [14th Dist.] 1992, no writ). The contacts must be purposely directed at or take place within the forum, and must have a "substantial connection" that results in the alleged injuries. *Michiana Easy Livin' Country Inc.*, 127 S.W.3d at 96.

 Under the minimum contacts test for specific jurisdiction, we must de-

termine whether appellee has had purposeful contacts with the forum state, thus invoking the benefits and protections of its laws. *Guardian Royal,* 815 S.W.2d at 226. This requirement ensures that a nonresident defendant will not be haled into a jurisdiction based solely upon random or fortuitous contacts or the "unilateral activity of another party or a third person." *Id.* As long as the contact creates a substantial connection with the forum state, even a single act can support jurisdiction, but a single act or occasional acts may be insufficient to establish jurisdiction if their nature and quality and the circumstances of their commission create only an attenuated connection with the forum. *Burger King,* 471 U.S. at 476 n. 18, 105 S.Ct. at 2184. In determining whether a nonresident defendant's contacts are random and fortuitous, the Texas Supreme Court has looked at whether the contacts are based upon the unilateral acts of the plaintiff or if the defendant participated in an act that resulted in a contact. *CSR, Ltd.,* 925 S.W.2d at 595.

■ Merely contracting with a Texas citizen does not, by itself, satisfy the minimum contacts requirement. *Michiana Easy Livin' Country Inc.,* 127 S.W.3d at 96. However, even if a non-resident has a single contact with Texas, our courts may exercise specific jurisdiction if the contact is of substantial quality and nature and the cause of action arises out of that contact. *Id.; Ahadi v. Ahadi,* 61 S.W.3d 714, 719 (Tex.App.-Corpus Christi 2001, pet. denied); *Memorial Hosp. Sys.,* 835 S.W.2d at 650. The focus of the examination must be the nature of the contacts and the "nexus" these contacts create with the forum state. *Michiana Easy Livin' Country Inc.,* 127 S.W.3d at 96; *Ring Power Sys. v. International De Comercio Y Consultoria,* 39 S.W.3d 350, 354 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *McDermott v. Cro-*

*nin,* 31 S.W.3d 617, 621 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

## B. Contacts with Texas

The trial court entered a general order denying the special appearance of the parties. Due to its general nature, we assume that the trial court made the appropriate factual findings and conclusions of law to support a finding of both specific and general jurisdiction of Texas courts over Appellants. Initially, we focus our analysis on the issue of whether Appellants' contacts with Texas were sufficient to subject Appellants to specific jurisdiction. *See Michiana Easy Livin' Country Inc.,* 127 S.W.3d at 94; *see also C–Loc Retention Systems, Inc. v. Hendrix,* 993 S.W.2d 473, 478 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

## C. Specific Jurisdiction

■ Appellee alleged that Appellants have committed acts that constitute doing business in the state of Texas such that they could reasonably have expected to be subject to the jurisdiction of Texas courts. Appellee plead that Appellants entered into a contract with Appellee, a Texas resident, with the intention of purchasing products from Appellee and agreed to pay for the products in Texas. Appellee contends that the contractual basis for the relationship between the parties may be one factor considered by the courts in determining that minimum contacts existed between Appellants and Texas. Further, Appellee alleges that Appellants committed certain torts against them in Texas. The torts complained of are the trade dress infringement and trademark infringement. The trade dress infringement allegedly occurred upon the sale of goods in Texas designed and packaged to resemble Appellee's Karina product line, and the trademark infringement occurred through

the use of Appellee's Karina trademark in the meta tag of the Bayside web page. Appellants admitted that they sold products to Texas stores. Appellee contends and the trial court found by implication, that the contractual relationship, the sale of products in Texas stores and the allegations of tortious contact is sufficient to establish minimum contacts between Appellants and Texas. Appellants had the burden of negating the foregoing bases for personal jurisdiction. *See Kawasaki Steel Corp.*, 699 S.W.2d at 203.

We recognize that the act of entering into a contract and the subsequent breach of a contract, without more, is not necessarily sufficient to confer jurisdiction on the Texas courts. *See TeleVentures, Inc.*, 12 S.W.3d at 908. The record reflects, and we must presume that the trial court found, that the parties had entered into a contract whereby the Appellants ordered products from the Texas Appellee, agreed to pay for the products in Texas, and sent various communications back and forth between the parties regarding the agreement and that the contractual basis for supporting the cause of action was based on more than the mere entering into a contract with a Texas resident. Looking to the evidence which supports the implied findings of the trial court, we cannot say that the trial court's implied finding of minimum contacts because of the agreement to perform and subsequent breach of the Texas contract is manifestly unjust.

Turning to the issue of the commission of the torts, we agree with Appellee that there is sufficient evidence in the record to support the trial court's implied finding that the tort of trade dress and trademark infringement were committed in Texas. The record reflects some evidence that Appellants sold products in Texas and that the sale of such products would constitute trade dress infringement. Again recogniz-

ing that our review is limited by the lack of findings, we cannot say that the implied finding is manifestly unjust or unsupported by the record. We do not reach the underlying merits of the case we look only to whether the trial court's decision is erroneous as a matter of law. *See Ring Power Sys.*, 39 S.W.3d at 353.

■ Appellants admitted that Bayside included a meta tag on the Bayside website which contained, without the permission of Appellee, the Karina trademark. We agree with Appellee that the use, without permission of another's trademark in a meta tag may constitute trademark infringement. *See Horphag Research Ltd.*, 337 F.3d at 1040; *Playboy Enterprises, Inc. v. Calvin Designer Label*, 985 F.Supp. 1220, 44 U.S.P.Q.2d 1156 (N.D.Cal.1997).

■ We review the evidence related to Appellants' websites to determine whether it is sufficient to support the implied findings of specific and general jurisdiction by the trial court. "Internet use is characterized as falling within three categories on a sliding scale for purposes of establishing personal jurisdiction." *Michel v. Rocket Engineering Corp.*, 45 S.W.3d 658, 677 (Tex.App.-Fort Worth 2001, no pet.), *citing Jones v. Beech Aircraft Corp.*, 995 S.W.2d 767, 772 (Tex.App.-San Antonio 1999, pet. dism'd w.o.j.). At one end of the scale are websites clearly used for transacting business over the internet, such as entering into contracts and knowing and repeated transmission of files of information, which may be sufficient to establish minimum contacts with a state. *Id.* On the other end of the spectrum are "passive" websites that are used only for advertising over the internet and are not sufficient to establish minimum contacts even though they are accessible to residents of a particular state. *Id.* In the middle are "interactive" websites that allow the "exchange" of information between a potential customer and a

host computer. *Id.* Jurisdiction in cases involving interactive websites is determined by the degree of interaction. *Id.* Texas courts have used this test in determining whether an internet site is sufficient to support the exercise of general jurisdiction over a defendant. *See, e.g., Townsend v. Univ. Hosp.-Univ. of Colo.,* 83 S.W.3d 913, 922 (Tex.App.-Texarkana 2002, pet. denied); *Experimental Aircraft Ass'n, Inc. v. Doctor,* 76 S.W.3d 496, 506–07 (Tex.App.-Houston [14th Dist.] 2002, no pet.); *Gessmann v. Stephens,* 51 S.W.3d 329, 338–39 (Tex.App.-Tyler 2001, no pet.); *Michel,* 45 S.W.3d at 677; *Riviera Operating Corp. v. Dawson,* 29 S.W.3d 905, 911 (Tex.App.-Beaumont 2000, pet. denied); *Daimler–Benz Aktiengesellschaft,* 21 S.W.3d at 725.

The record provides evidence that the Bayside website is interactive, i.e., that individuals may order off the website. The Bayside website provides access to Texas customers like any other user of the internet. Evidence was presented to the trial court regarding the operation of the website, which included evidence of payments made to various search engines to direct users to the websites, and the method for placement of orders. The Camila Paris products are available to Texas residents through the website. There is sufficient evidence presented to support the trial court's implied finding that the Bayside website is interactive and more than merely a passive site subjecting the corporate entity to the jurisdiction of Texas courts.

### D. Alter Ego

We also agree that the record contains sufficient evidence to support the trial court's implied finding that Bayside was the alter ego of I & JC thereby imputing its tortious conduct to I & JC under the alter ego theory.

Personal jurisdiction may exist over a nonresident defendant if the relationship between the foreign corporation and its parent corporation that does business in Texas is one that would allow the court to impute the parent corporation's "doing business" to the subsidiary. *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983); *Walker v. Newgent,* 583 F.2d 163, 167 (5th Cir.1978); *BMC Software Belgium, N.V.,* 83 S.W.3d at 798. The rationale for exercising jurisdiction is that "the parent corporation exerts such domination and control over its subsidiary 'that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for purposes of jurisdiction.'" *Hargrave,* 710 F.2d at 1159 (citations omitted); *BMC Software Belgium, N.V.,* 83 S.W.3d at 798. The party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation. *Walker,* 583 F.2d at 167; *BMC Software Belgium, N.V.,* 83 S.W.3d at 798; *see also Lucas v. Texas Indus., Inc.,* 696 S.W.2d 372, 375 (Tex.1984). This is because Texas law presumes that two separate corporations are indeed distinct entities:

> The general rule seems to be that courts will not because of stock ownership or interlocking directorship disregard the separate legal identities of corporations, unless such relationship is used to defeat public convenience, justify wrongs, such as violation of the anti-trust laws, protect fraud, or defend crime.

*Bell Oil & Gas Co. v. Allied Chem. Corp.,* 431 S.W.2d 336, 339 (Tex.1968) (citations omitted).

To "fuse" the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove the parent controls the internal business operations and affairs of the subsidiary. *BMC Software*

*Belgium, N.V.,* 83 S.W.3d at 799. But the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice. *BMC Software Belgium, N.V.,* 83 S.W.3d at 799; *see Hargrave,* 710 F.2d at 1160; *Conner v. Conti-Carriers and Terminals,* 944 S.W.2d 405, 419 (Tex.App.-Houston [14th Dist.] 1997, no writ); *see also Gentry v. Credit Plan Corp. of Houston,* 528 S.W.2d 571, 573 (Tex.1975).

As evidence of alter ego, Appellee contends first that the two corporate Appellants are closely related entities. The evidence reflected that the individuals Jorge Castillo and Ivan Lopez are partners in the business operations of Bayside and I & JC. I & JC sells Camila Paris products through Bayside. The companies share the same offices, address, telephone number, officers, directors, and shareholders. Jorge Castillo, the president of I & JC controls the daily operations of Bayside but receives a paycheck only from I & JC. The financial operations of the companies are handled as one corporation. In short, the record is replete with examples of overlap between the two entities such that there is more than sufficient evidence for the trial court to have found that each corporation is the alter ego of the other and any minimum contacts of one may be imputed to the other.

This record shows such unity between the two corporations that the separateness of the corporations is virtually non-existent. Accordingly, we hold that the evidence is sufficient to support the trial court's implied finding that I & JC is the alter ego of Bayside and Bayside is the alter ego of I & JC. For this reason, the trial court was correct in denying the special appearances on the grounds that it had general jurisdiction over the Appellants as a result of the doctrine of alter ego.

When reviewing the trial court's ruling on Appellants' special appearances, we do not reach the merits of the underlying case. *See Ring Power Sys.,* 39 S.W.3d at 353. The purpose of a special appearance is not to determine liability, but whether the actions alleged by a plaintiff are of a type that suggest a defendant should expect to be subject to Texas jurisdiction. *See Mort Keshin & Co. v. Houston Chronicle Publ'g Co.,* 992 S.W.2d 642, 648 (Tex. App.-Houston [14th Dist.] 1999, no pet.). "Accordingly, where the plaintiff alleges an action in tort that arose out of an act committed in Texas, the necessary proof is only that the purposeful act was committed in this State." *Ring Power Sys.,* 39 S.W.3d at 353. Thus, we need not determine whether a breach of contract actually occurred in Texas or whether the allegations of trade dress or trademark infringements actually are in fact trade dress or trademark infringements; rather, we focus on the fact that the underlying conduct occurred here in Texas. Instead, we need only determine whether those jurisdictional facts were adequately alleged in Appellee's pleadings and whether those allegations were sufficiently supported by the evidence presented to the trial court to sustain the court's ruling on Appellants' special appearances.

Appellants contend that they have presented sufficient evidence to negate the jurisdictional facts found by the trial court. Because the trial court did not issue findings of fact and conclusions of law, however, we must presume that the trial court resolved all factual disputes in Appellee's favor.

We are persuaded that the record in the trial court provided ample evidence to support its implied findings and conclusions

that Appellants had sufficient minimum contacts with the state of Texas to justify either specific or general jurisdiction, that each corporation functions as the alter ego of the other, and that any torts committed by one may be imputed to the other. We recognize that we must focus on the nexus between the contact and the cause of action asserted. We are persuaded that the actions of the Appellants in trade dress infringement and trademark infringement are intimately involved with the Appellants' contacts with Texans, specifically through their repeated and continuous solicitation of Texas customers. The allegation of tort, particularly via the forum of their interactive website, is sufficient to implicate the need for Texas to provide a forum for redress to its citizens.

Finally, we consider whether the trial court's determination violates principals of fair play and substantial justice.

### E. Fair Play and Substantial Justice

 Having found that Appellants had sufficient minimum contacts with Texas, we next turn to whether the exercise of jurisdiction in Texas is reasonable. To determine whether jurisdiction is reasonable, we evaluate the following factors: (1) the burden on the appellee, (2) Texas's interest in adjudicating the dispute, (3) appellant's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184; *Guardian Royal,* 815 S.W.2d at 231.

There is no evidence in the record showing that litigation in Texas would be unfair or unreasonable to Appellants. Although there is a significant geographical distance between the parties' business offices, dis-

tance alone is not sufficient to defeat jurisdiction. *Guardian Royal,* 815 S.W.2d at 231. The parties have regularly done business with Texas entities and intend to market to Texas through their interactive website. The torts, the trade dress infringement, and the use of the Karina trademark were intended to solicit sales from individuals searching for hair and beauty products. Texas has an interest in protecting Texas companies from the business torts of competitors doing business in our state.

Thus, we conclude that Appellants' contacts with Texas are sufficient, particularly considering the quality and nature of their contacts, to confer specific jurisdiction over them. Furthermore, subjecting Appellants to the jurisdiction of Texas courts is reasonable under the circumstances and does not offend the traditional notions of fair play and substantial justice. Given the companies' activities and voluntary use of the Karina trademark on their interactive website, Appellants should reasonably anticipate being haled into court in Texas in a suit pertaining to the torts of trade dress infringement and trademark infringement. Accordingly, we overrule Appellants' Issues One through Six.

Having overruled each of Appellants' issues, we affirm the judgment of the trial court.