ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

August 14, 2007

Mr. James A. Cox, Jr., Chair
Texas Lottery Commission
Post Office Box 16630
Austin, Texas 78761-6630

Opinion No. GA-0563

Re: Eligibility for a manufacturer's or distributor's license under the Bingo Enabling Act, chapter 2001 of the Occupations Code (RQ-0573-GA)

Dear Mr. Cox:

Under the Bingo Enabling Act, chapter 2001 of the Occupations Code (the "Act"), the Texas Lottery Commission (the "Commission") licenses manufacturers and distributors of bingo equipment and supplies. *See* TEX. OCC. CODE ANN. §§ 2001.201, .206 (Vernon 2004). Under sections 2001.202 and 2001.207 of the Act, a person holding an "equitable or credit interest" in another distributor or manufacturer or an applicant required to name such persons in its application is generally ineligible for a manufacturer's or distributor's license. *See id.* §§ 2001.202(8)–(9), .207(8)–(9). On behalf of the Commission, you ask whether "a person is ineligible for a bingo manufacturer's or distributor's license . . . if an individual required to be named in the license application holds a ten percent or more proprietary, equitable, or credit interest in a holding company that has a proprietary, equitable, or credit interest in [another] manufacturer or distributor."[1] We first consider the relevant provisions of the Act.

I.    Statutory Background

The Act generally requires persons involved in the bingo industry, including bingo distributors and manufacturers,[2] to be licensed by the Commission. *See, e.g., id.* §§ 2001.101, .151, .201, .206, .251; *see also* Tex. Att'y Gen. Op. No. GA-0186 (2004) at 1 (stating that the Act generally requires licensing of "all persons . . . involved in any aspect of the bingo industry"). An unlicensed manufacturer "may not sell or supply to a person in this state or for use in this state bingo

---

[1]*See* Letter from James A. Cox, Jr., Chair, Texas Lottery Commission, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Feb. 23, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) (footnote omitted) [hereinafter Request Letter].

[2]A "distributor" is "a person who obtains . . . bingo equipment or supplies for use in bingo in this state and sells or furnishes the items to another person for use, resale, display, or operation." TEX. OCC. CODE ANN. § 2001.002(9) (Vernon 2004). And a "manufacturer" is, in general, a person who assembles bingo equipment or supplies or who converts bingo equipment or items to further promote the sale or use of the same in the state. *See id.* § 2001.002(16).

cards, boards, sheets, pads, or other supplies, or equipment designed to be used in playing bingo, or engage in any intrastate activity involving those items." TEX. OCC. CODE ANN. § 2001.201 (Vernon 2004). Similarly, an unlicensed distributor "may not sell, distribute, or supply bingo equipment or supplies for use in bingo in this state." *Id.* § 2001.206. Moreover, a manufacturer is ineligible for a distributor's license and a distributor is ineligible for a manufacturer's license. *See id.* §§ 2001.202(6), .207(6).

Sections 2001.202 (relating to manufacturers) and 2001.207 (relating to distributors) provide, in essentially identical language, that the following persons, among others, are ineligible for manufacturers' and distributors' licenses, respectively:

> (8) an owner, officer, director, or shareholder of, *or a person holding an equitable or credit interest in, another manufacturer or distributor* licensed or required to be licensed under this chapter; or

> (9) a person:

>> (A) *in which a person described by Subdivision* (1), (2), (3), (4), (5), (6), (7), *or (8)* or in which a person married or related in the first degree by consanguinity or affinity to one of those persons has greater than a 10 percent proprietary, equitable, or credit interest or in which one of those persons is active or employed; or

>> (B) in whose application for a [manufacturer's or distributor's] license *a person described by Subdivision* (1), (2), (3), (4), (5), (6), (7), or *(8) is required to be named.*

*Id.* § 2001.202(8)–(9) (emphasis added); *see id.* § 2001.207(8)–(9) (using essentially the same language). Under the Act, a "person" is defined to "mean[] an individual, partnership, corporation, or other group." *Id.* § 2001.002(20).

You ask about an applicant required to list in its application an individual who holds ten percent or more of an equitable or credit interest in a holding company that in turn has an equitable or credit interest in another licensed manufacturer or distributor, but you do not indicate whether the applicant is corporate or noncorporate. *See* Request Letter, *supra* note 1, at 1.[3] A noncorporate applicant must list in its application to the Commission the "name and home address of each owner." TEX. OCC. CODE ANN. §§ 2001.203(b)(3)(A), .208(3) (Vernon 2004). And a corporate applicant for a license must list the name of each person that owns ten percent or more of stock in the applicant as well as the name of each officer and director. *Id.* §§ 2001.203(b)(3)(B), .208(4). Because both corporate and noncorporate applicants must list individuals with the described relationship to the

---

[3]You ask about "a proprietary, equitable, or credit" interest. *See* Request Letter, *supra* note 1, at 1. We note, however, that sections 2001.202(8) and 2001.207(8), which are the relevant provisions here, do not reference "proprietary" interest. *See* TEX. OCC. CODE ANN. §§ 2001.202(8), .207(8) (Vernon 2004).

applicant, your question is not limited to any particular type of applicant and, on its face, implicates sections 2001.202(9)(B) and 2001.207(9)(B), which incorporate sections 2001.202(8) and 2001.207(8). *See id.* §§ 2001.202(9)(B), .207(9)(B).

Under sections 2001.202(9)(B) and 2001.207(9)(B), an applicant required in its application to name a person described by any of the subdivisions (1) through (8) of sections 2001.202 and 2001.207, respectively, is ineligible for a license. *See id.* §§ 2001.202(9)(B), .207(9)(B).[4] "[A] person [holding or having] an equitable or credit interest in, another manufacturer or distributor" is a person described by subdivision (8) of each of these statutes.[5] *Id.* §§ 2001.202(8), .207(8).

## II.   Analysis

Thus, your question requires us to construe sections 2001.202(8) and 2001.207(8) and determine whether an individual, solely by virtue of his or her ownership of an equitable or credit interest in a holding company, holds an equitable or credit interest in a subsidiary bingo manufacturer or distributor company.

If the statutory language is unambiguous, courts will "generally interpret the statute according to its plain meaning." *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."). Accordingly, we begin with the plain language of sections 2001.202(8) and 2001.207(8). Subdivision (8) of each statute renders ineligible for a manufacturer's or distributor's license "an owner, officer, director, or shareholder of, or *a person [holding* or *having] an equitable or credit interest in, another manufacturer or distributor.*" TEX. OCC. CODE ANN. §§ 2001.202(8), .207(8) (Vernon 2004) (emphasis added); *see also id.* §§ 2001.202(9)(B), .207(9)(B) (providing that persons required to name persons described by subdivision (8) are ineligible for a license). By their plain language, the statutes require the person in question to hold or possess the equitable or credit interest in the other manufacturer or distributor. *See id.* §§ 2001.202(8), .207(8).

But the person in question here—the individual required to be named by the applicant for a license—does not hold the equitable or credit interest in the other manufacturer or distributor. *See*

---

[4]Such an applicant may also be ineligible for a license under sections 2001.202(9)(A) and 2001.207(9)(A). *See* TEX. OCC. CODE ANN. §§ 2001.202(9)(A), .207(9)(A) (Vernon 2004). We do not consider these provisions because you do not describe the individual's relationship to the applicant. Moreover, your concern here is with the meaning of sections 2001.202(8) and 2001.207(8). *See* Request Letter, *supra* note 1, at 1–2.

[5]You ask about an individual holding ten percent or more of an equitable or credit interest in a holding company that holds an equitable or credit interest in a manufacturer or distributor. *See id.* We note, however, that neither section 2001.202(8) nor section 2001.207(8) of the Act limits its application to a person holding a certain percentage of equitable or credit interest in another manufacturer or distributor; it applies to a person holding any percentage of such interest. *See* TEX. OCC. CODE ANN. §§ 2001.202(8)(B), .207(8)(B) (Vernon 2004); *cf.* Tex. Att'y Gen. Op. No. GA-0186 (2004) at 4 (stating that neither section 2001.202(8) nor section 2001.207(8) requires any particular percentage of ownership of shares).

Request Letter, *supra* note 1, at 1–2.  Instead, you tell us that the holding company holds such equitable or credit interest. *See id.*  The Act does not reference or define a "holding company," but we understand you to refer to a company that owns "securities by which it is possible to control or substantially to influence the policies and management of one or more operating companies in a particular field of enterprise."[6] *N. Am. Co. v. S.E.C.*, 327 U.S. 686, 701 (1946).

While a holding company may control the subsidiary company, the holding company and the subsidiary are distinct and separate legal entities.  *See CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 898 (Tex. App.—Dallas 2007, no pet. h.); *Docudata Records Mgmt. Servs., Inc. v. Wieser*, 966 S.W.2d 192, 197 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); *see also I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877, 889–90 (Tex. App.—El Paso 2005, pet. denied) (discussing general distinction between a parent company and its subsidiary and when they may be "fused" for the purposes of a legal proceeding).  The distinction between a holding company and its subsidiary will not generally be disregarded because "disregard of the 'legal fiction of corporate entity' is 'an exception to the general rule which forbids disregarding corporate existence.'" *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984) (quoting *First Nat'l Bank in Canyon v. Gamble*, 132 S.W.2d 100, 103 (Tex. 1939)).  Texas courts will not "because of stock ownership or interlocking directorship disregard the separate legal identities of corporations, unless such relationship is used to defeat public convenience, justify wrongs, such as violation of the anti-trust laws, protect fraud, or defend crime." *I & JC Corp.*, 164 S.W.3d at 889 (quoting *Bell Oil & Gas Co. v. Allied Chem. Corp.*, 431 S.W.2d 336, 339 (Tex. 1968)); *see also Town Hall Estates-Whitney, Inc. v. Winters*, 220 S.W.3d 76, 86 (Tex. App.—Waco 2007, no pet.) ("There must be something more than mere unity of financial interest, ownership and control for a court to treat the subsidiary as the alter ego of the parent and make the parent liable for the subsidiary's tort.").

Because the holding company is a separate legal entity from its subsidiary manufacturer or distributor, the individual in question does not hold, as a matter of law, an equitable or credit interest in the subsidiary manufacturer or distributor by virtue of his or her equitable or credit interest in the holding company.  It is possible, however, that a holding company and its subsidiary might, in particular circumstances, be treated as a single entity and an equitable or credit interest in a holding company determined to be an equitable or credit interest in the subsidiary company. *Cf. I & JC Corp.*, 164 S.W.3d at 889 (stating general rule that separate corporate identities will not be disregarded by Texas courts unless the relationship is used to defeat public convenience, justify wrongs, protect fraud, or defend crime).  However, that determination would be a fact-sensitive inquiry made by a court with the appropriate jurisdiction over the particular legal proceedings. *See id.*

---

[6]*See, e.g.*, TEX. BUS. ORGS. CODE ANN. § 10.005(a)(2) (Vernon 2006) ("'Holding company' means a domestic entity that, from its organization until a merger takes effect, was at all times a direct or indirect wholly owned subsidiary of the merging domestic entity and the ownership or membership interests of which are issued to the members or owners of the merging domestic entity in the merger."); TEX. FIN. CODE ANN. § 91.002(16) (Vernon Supp. 2006) ("'Holding company' means a company that directly or indirectly controls a savings bank or controls another company that directly or indirectly controls a savings bank."); TEX. INS. CODE ANN. § 823.002(5) (Vernon 2006) ("'Holding company' means a person who directly or indirectly controls an insurer.").

Your letter suggests that the terms "equitable or credit interest" in sections 2001.202(8) and 2001.207(8) may reach the "interest" that the individual in question has or may have—through the holding company—in the separate subsidiary manufacturer or distributor. *See* Request Letter, *supra* note 1, at 2 ("Does this sort of relationship [among the applicant, the individual, the holding company, and the subsidiary manufacturer or distributor] create an "equitable, proprietary or credit interest?""). The Act does not define "equitable interest" or "credit interest." And we have found no other statutory or judicial decisions defining such terms in this or a similar context. But read in the context of sections 2001.202(8) and 2001.207(8), "equitable interest" appears to contemplate some type of beneficial interest in another bingo manufacturer or distributor. *See* TEX. OCC. CODE ANN. §§ 2001.202(8), .207(8) (Vernon 2004); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."); *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993) ("When the legislature has failed to define a word or term, courts will apply its ordinary meaning.").[7] And "credit interest," read in the statutory and commercial context here, appears to refer broadly to any right or claim to repayment for money loaned or advanced to another manufacturer or distributor regardless of the profitability of that entity or venture.[8] Read in context, the term "equitable or credit interest" does not encompass, as a matter of law, the individual's "interest," if any, in the subsidiary manufacturer or distributor.

The individual here holds some type of beneficial interest in or has a right or claim to be repaid moneys from the holding company rather than from the subsidiary manufacturer or distributor company. Again, because the holding company is a separate legal entity from its subsidiary bingo manufacturer or distributor, the individual does not possess, as a matter of law, a beneficial interest in the subsidiary or a monetary claim against the subsidiary solely by virtue of his or her interest in the holding company. It is entirely possible that in particular circumstances, such an individual may possess or be deemed to possess a beneficial interest[9] in the subsidiary manufacturer or distributor notwithstanding its legal separation from the holding company. But, that determination must be made by the Commission or a court based on the particular factual circumstances.

We recognize that a holding company might be used as a device to circumvent the Act's ownership and interest restrictions in its licensing requirements. But, like a court, this office cannot disregard the plain language of the statute or insert words into the statute to foreclose that possibility.

---

[7] *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 423 (11th ed. 2005) (defining "equitable" in the sense of "existing or valid in equity as distinguished from law"); BLACK'S LAW DICTIONARY 816 (7th ed. 1999) (defining "equitable interest" as "[a]n interest held by virtue of an equitable title or claimed on equitable grounds, such as the interest held by a trust beneficiary").

[8] *See* MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 294 (11th ed. 2005) (defining "creditor" as "one to whom a debt is owed"); WEBSTER'S NEW WORLD FINANCE AND INVESTMENT DICTIONARY 83, 85 (2003) (defining "credit" as "[a]ny money lent through bonds or loans" that "must be paid back or the borrower risks defaulting," and a "creditor" as "[a]n entity that has a monetary claim against a debtor"); *see also Bauer v. Comm'r of Internal Revenue*, 748 F.2d 1365, 1367 (distinguishing between shareholder and creditor).

[9] *See supra* note 8.

*See R.R. Comm'n of Tex. v. Miller*, 434 S.W.2d 670, 672 (Tex. 1968) (stating that because courts are not the law-making body, they are not responsible for omissions in legislation but only for interpreting the statute as written, quoting *Simmons v. Arnim*, 22 S.W. 66, 70 (Tex. 1920)); *see also McIntyre v. Ramirez*, 109 S.W.3d 741, 748 (Tex. 2003) (stating that a court's role is not to second-guess the Legislature's policy choices informing a statute or to weigh the effectiveness of their results). It is the Legislature's responsibility to impose restrictions, if any, in the statutory language that it deems necessary or desirable. *See Holmes v. Morales*, 924 S.W.2d 920, 925 (Tex. 1996); *see also Seay v. Hall*, 677 S.W.2d 19, 25 (Tex. 1984) ("[I]t would be an usurpation of our powers to add language to a law where the legislature has refrained.").

Nor can this office disregard the separate legal identities of a holding company and its subsidiary manufacturer or distributor to avert that possibility. First, this office cannot ignore or overrule judicial decisions generally recognizing the distinction between a holding company and its subsidiary. *See supra* pp. 3–4; *see also* Tex. Att'y Gen. Op. No. JC-0507 (2002) at 8 ("[T]he Office of the Attorney General cannot overrule a judicial decision."). Second, while courts have the authority to disregard separate corporate identities in particular instances when necessary for the public convenience or to prevent violations of the law, they do so sparingly and after a fact-intensive analysis. *Cf. I & JC Corp.*, 164 S.W.3d at 889.

## III. Conclusion

In response to your question, we conclude that an applicant that must list in its application an individual who holds ten percent or more of an equitable or credit interest in a holding company that, in turn, holds an equitable or credit interest in another subsidiary bingo manufacturer or distributor company, is not ineligible as a matter of law for a distributor's or manufacturer's license under the Act.

## S U M M A R Y

Under the Bingo Enabling Act, chapter 2001 of the Occupations Code, an applicant required to list in its application an individual who holds ten percent or more of an equitable or credit interest in a holding company that, in turn, holds an equitable or credit interest in another subsidiary manufacturer or distributor company, is not ineligible as a matter of law for a distributor's or manufacturer's license. Because the holding company and its subsidiary are treated as separate and distinct legal entities under Texas law, the individual does not hold, as a matter of law, an equitable or credit interest in the subsidiary bingo manufacturer or distributor by virtue of his or her equitable or credit interest in the holding company.

Very truly yours,

GREG ABBOTT
Attorney General of Texas


KENT C. SULLIVAN
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee