

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-159-CV

JACK WHITE                                                              APPELLANT

V.

GAIL WHITE                                                              APPELLEE

------------

FROM THE 90TH JUDICIAL DISTRICT COURT OF YOUNG COUNTY

------------

### MEMORANDUM OPINION[1]

------------

In five issues, Appellant Jack White appeals from the trial court's final decree of divorce. Because we hold that the trial court did not abuse its discretion, we affirm the trial court's judgment.

In his fifth issue, Jack contends that the trial court erred by failing to file findings of fact and conclusions of law. The trial court rendered the divorce on January 31, 2007. The trial court signed the divorce decree on April 23, 2007.

---

[1] *See* TEX. R. APP. P. 47.4.

Jack filed his first request for findings of fact and conclusions of law on March 12, 2007, and his second request on May 16, 2007. His notice of past due findings of fact and conclusions of law was filed on July 6, 2007. We treat his preliminary request as being filed on the date of, but after the signing of, the judgment, April 23, 2007.[2] That request is therefore timely.[3] The second request is also a timely request,[4] but it does not satisfy the requirements of rule 297 for a notice of past due findings because it does not contain the title "Notice of Past Due Findings of Fact and Conclusions of Law" or state the date that the findings of fact and conclusions of law were due.[5] The notice of past due findings, filed more than thirty days after April 23, 2007, the effective date of the original request, was untimely filed.[6] Jack has therefore forfeited this complaint on appeal.[7] We overrule his fifth issue.

---

[2] *See* TEX. R. CIV. P. 306c, TEX. R. APP. P. 27.2.

[3] *See* TEX. R. CIV. P. 296.

[4] *See id.*

[5] *See* TEX. R. CIV. P. 297; *I & JC Corp. v. Helen of Troy L.P.*, 164 S.W.3d 877, 885 (Tex. App.—El Paso 2005, pet. denied); *Curtis v. Comm'n for Lawyer Discipline*, 20 S.W.3d 227, 232 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *see also Baker v. Peterson*, No. 10-02-00113-CV, 2004 WL 756622, at *1 (Tex. App.—Waco April 7, 2004, no pet.) (mem. op.).

[6] *See* TEX. R. CIV. P. 297.

[7] *See Las Vegas Pecan & Cattle Co. v. Zavala County*, 682 S.W.2d 254, 255 (Tex. 1984); *Ogletree v. Glen Rose Indep. Sch. Dist.*, 226 S.W.3d

In his first issue, Jack contends that the trial court abused its discretion by granting the divorce solely on the ground of adultery. Appellee Gail White pled adultery as a ground; Jack admitted on the stand that he had committed adultery. We cannot conclude that the trial court abused its discretion by granting the divorce based on a statutory ground that was pled and proven.[8]

Jack also complains in his first issue about the property division. A trial court is charged with dividing the community estate in a "just and right" manner, considering the rights of both parties.[9] If there is any reasonable basis for doing so, we must presume that the trial court exercised its discretion properly.[10] We will not disturb the trial court's division unless the record demonstrates "that the division was clearly the result of an abuse of discretion."[11] That is, we will not reverse the case unless the record clearly

---

629, 633–34 (Tex. App.—Waco 2007, no pet.).

[8] *See* TEX. FAM. CODE ANN. § 6.003 (Vernon 2006); *see also Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (holding that in a bench trial where there are no findings of fact or conclusions of law, the judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence).

[9] TEX. FAM. CODE ANN. § 7.001 (Vernon 2006); *Todd v. Todd*, 173 S.W.3d 126, 128–29 (Tex. App.—Fort Worth 2005, pet. denied).

[10] *Todd*, 173 S.W.3d at 129.

[11] *Id.*

shows that the trial court acted arbitrarily or unreasonably.[12] The complaining party has the burden of proving from the record that the division was so unjust that the trial court abused its discretion.[13] The values of individual items "are evidentiary to the ultimate issue of whether the trial court divided the properties in a just and right manner."[14]

As this court has already explained,

> In exercising its discretion, the trial court must order an equitable, but not necessarily equal, division of the community estate. In dividing the estate, the trial court can consider a variety of factors . . . .
>
> Some of the factors the trial court can consider include the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, size of the separate estates, and the nature of the property.
>
> In addition to the factors set forth in *Murff* [*v. Murff*], the trial court may also consider fraud on the community, wasting of community assets, child custody, and fault in the breakup of the marriage. Additionally, although retirement benefits earned during marriage are generally community property that is subject to division, the trial court, in its discretion, may award such benefits

---

[12] *Id.*

[13] *Id.*

[14] *Id.*

4

to the party who earned them.[15]

In the divorce decree, the trial court awarded Gail her retirement account, the 2001 Jeep she was driving, and the couple's house in Graham. The trial court ordered Gail to pay the debts associated with the house and the Jeep as well as credit card debt. The trial court awarded Jack his retirement account, the 2003 Chevrolet Avalanche he was driving, and all property in his possession. The trial court ordered Jack to pay the debt associated with the Avalanche. Each party was ordered to pay his or her own attorney's fees. In rough, conservative terms, based on our review of the record, Gail appears to have received more than 50% but less than 55% of the net asset value of the community estate awarded, and Jack appears to have received more than 45% but less than 50% of the net asset value of the community estate awarded.

In addition to the evidence of Jack's adultery, the trial court also heard evidence that

- at the time of trial, Jack was employed as a band director, and his take-home pay was about $3,300 per month;

- Gail was employed as a secretary to a school superintendent, and her take-home pay was about $2,007 per month;

- Jack had not contributed any money toward household bills or house payments during the twelve months prior to the trial;

---

[15] *Schaban-Maurer v. Maurer-Schaban*, 238 S.W.3d 815, 820–21 (Tex. App.—Fort Worth 2007, no pet.) (citations omitted).

- Jack had not lived in Graham for ten or eleven years prior to the trial; Gail remained in the house in Graham and maintained it during this period; and

- Gail had volunteered to retire and move with him to the locations of his various band director positions, but he had wanted her to stay in Graham and maintain the house.

Based on our review of the record, we cannot conclude that Jack has met his burden of demonstrating that the division was so unjust that the trial court abused its discretion. We therefore overrule Jack's first issue.

In his second issue, Jack contends that the trial court abused its discretion by failing to consider Gail's fraud on the community in making the property division. A presumption of constructive fraud arises where one spouse breaches the fiduciary duty owed to the other spouse and disposes of the other spouse's one-half interest in community property without the other's knowledge or consent.[16] When that occurs, the burden of proof is on the disposing spouse to show fairness in disposing of community assets.[17] Jack complains of the disposition of funds from a certificate of deposit (CD), a joint bank account, and a tax refund.

He contends that the parties had a $10,000 CD in a joint account opened

---

[16] *Loaiza v. Loaiza*, 130 S.W.3d 894, 901 (Tex. App.—Fort Worth 2004, no pet.).

[17] *Id.*

6

during the marriage but that Appellee withdrew the principal and interest, $11,947.95, closed the account just one day before filing her petition for divorce, and then deposited the money into an account in her name only, payable on death to her sister. Gail did not dispose of the funds. They were still in existence at the time of trial and, to the extent they were community assets, subject to division.[18]

The undisputed evidence shows that Gail used the joint checking account funds to pay "bills that [they] both acquired." She received the tax refund after filing separately during the pendency of the divorce. There is no evidence in the record that she disposed of the tax refund. Based on our review of the record, we cannot say that Gail's conduct regarding these three assets amounted to fraud or that the trial court abused its discretion by not considering any alleged fraud.[19] We overrule Jack's second issue.

In his third issue, Jack contends that the trial court abused its discretion by mischaracterizing the CD as Gail's separate property. Even though the trial judge indicated in a letter written before he signed the decree that the CD would be awarded to Gail, the trial court did not characterize the CD as Gail's separate property or as community property in the divorce decree—the trial

---

[18] *See* TEX. FAM. CODE ANN. § 7.001 (Vernon 2006).

[19] *See Worford*, 801 S.W.2d at 109.

7

court did not mention the CD in the divorce decree at all. Accordingly, we cannot conclude that the trial court mischaracterized the CD.[20] We overrule Jack's third issue.

In his fourth issue, Jack contends that the trial court erred by failing to consider his health when making the property division. Jack testified at trial that he had been diagnosed with bone cancer and had just made his final payment to the hospital for uninsured medical expenses. Nothing in the record indicates that the trial court did not consider the evidence of Jack's health in dividing the community estate.[21] We overrule Jack's fourth issue.

Having overruled all of Jack's issues, we affirm the trial court's judgment.


LEE ANN DAUPHINOT
JUSTICE

---

[20] *See id.*; *see also* TEX. FAM. CODE ANN. § 7.001 ("In a *decree of divorce* or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right.") (emphasis added); *id.* § 9.201(a) ("Either former spouse may file a suit as provided by this subchapter *to divide property not divided or awarded to a spouse in a final decree of divorce* or annulment.") (emphasis added); *Cook v. Cook*, 888 S.W.2d 130, 131–32 (Corpus Christi 1994, no writ); *Kostura v. Kostura*, 469 S.W.2d 196, 198 (Tex. Civ. App.—Dallas 1971, writ ref'd n.r.e.) (both holding that trial court did not err by signing divorce decree that differed from oral rendition).

[21] *See Worford*, 801 S.W.2d at 109.

PANEL B:  DAUPHINOT, HOLMAN, and WALKER, JJ.

DELIVERED: July 3, 2008