COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| CASAS GRANDES CONFECTIONS, LLC, | § | No. 08-10-00238-CV |
|  | § | Appeal from the |
| Appellant, | § | County Court at Law No. 7 |
| v. | § | of El Paso County, Texas |
| DULCES ARBOR, S. DE R.L. DE C.V. AND BLUEBERRY SALES, LLP, | § | (TC# 2009-765) |
| Appellees. | § |  |

# **O P I N I O N**

Casas Grandes Confections, LLC appeals from the denial of its special appearance. We affirm.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Dulces Arbor, a Mexican company, and Blueberry Sales, an American company, sued Casas Grandes and several other entities and individuals in El Paso, Texas. According to their third amended petition,[1] Dulces Arbor owns a candy manufacturing plant ("the Property") in Ciudad Juarez, Mexico. Blueberry Sales, which is Dulces Arbor's American counterpart, used the plant to make candy with equipment that it leased from C Leasing Company.

In 2007, Blueberry Sales and Dulces Blueberry, a Mexican company, combined certain assets with another company to create Simply Goodies. Bridge Healthcare Finance, LLC, and

---

[1] This is the live pleading for purposes of this appeal. At the hearing on the special appearance, the trial court granted Plaintiffs leave to file the third amended petition, and both sides cite to this petition in their briefs.

Bridge Opportunity Finance, LLC (collectively "Bridge") provided the lending for this transaction. The petition states, "Pursuant to the creation of Simply Goodies, DULCES ARBOR leased the Property to Dulces Blueberry."

In 2008, Robert Whetten, as agent of "the Elamex Entities," offered to purchase the Property. The Elamex Entities include Elamex, S.A. de C.V. ("Elamex Mexico"), Elamex USA Corp. ("Elamex USA"), and Mount Franklin Foods ("MFF"). Elamex Mexico is a Mexican corporation, which owns Elamex USA, an American corporation, which in turn owns MFF, a Texas limited liability company. Whetten is a board member of Elamex Mexico and MFF and is the sole director of Elamex USA. He is a former manager of Casas Grandes and a partner in Sunrise General Partnership, the United Kingdom partnership that owns Casas Grandes. Sunrise General Partnership also owns Sunrise Candy, LLC, a Nevada company that does business in Texas. Another related company is Manufacturas de Tamaulipas, S.A. de C.V.

The terms of the proposed sale of the Property are complicated. The petition states: "The transaction evolved to one in which, among other things, Manufacturas would purchase the Property from DULCES ARBOR pursuant to the terms of a Buy/Sell Agreement, CASAS GRANDES CONFECTIONS would enter into an Asset Purchase and Non-Competition Agreement and Consulting Agreement with Casa Brokers, LLC, and Silver Eagle Oil, Inc. would enter into a Guaranty of Payment to induce BLUEBERRY SALES to enter into the Asset Purchase and Non-Competition Agreement with CASAS GRANDES CONFECTIONS."

In November 2008, as negotiations for the purchase of the Property seemed to be nearing completion, Bridge contacted Dulces Arbor to ask what Dulces Arbor would take in exchange for dismissing certain Mexican lawsuits which had been filed to collect past-due rent from Dulces

2

Blueberry. Dulces Arbor offered to dismiss the suits in exchange for a $2 million standby letter of credit. After initially agreeing to this arrangement, Bridge suddenly "went silent." Shortly thereafter, the Elamex Entities advised Plaintiffs "that the purchase of the Property was permanently off unless certain new conditions were met."

In December 2008, MFF and Sunrise Candy assumed control of Simply Goodies' El Paso warehouse, located at 1240 Don Haskins. On December 8, Casas Grandes and Sunrise Candy bought Simply Goodies' assets located in Mexico and in Texas through a non-judicial UCC foreclosure sale in El Paso. The petition alleges that the defendants "schemed such that DULCES ARBOR, although required to be notified about the foreclosure sale according to the UCC, were [sic] intentionally never notified of the sale intentionally depriving DULCES ARBOR of its legal rights."

Simultaneous with the foreclosure on Simply Goodies' assets, "one or more of the Defendants" took control of the Property and began using it and the C Leasing equipment to make candy for MFF. Plaintiffs claim that the Defendants' goal all along was to take over the Property without buying it or paying to use it. They allege that Defendants "masterminded a scheme to acquire the assets of Simply Goodies from Bridge and thereafter commenced manufacturing candy in the Property for [MFF], all the while causing no rent to be paid . . . ." The petition asserts several causes of action. Most importantly for purposes of this appeal, the petition alleges that the Defendants committed fraud by inducing Plaintiffs to undertake negotiations to sell the Property and "causing them to forebear from taking additional actions to protect their interests in the Property, when, in fact, they had . . . no intention of performing the agreements and were, instead, intending to acquire the Simply Goodies assets, operate out of the Property for no consideration

3

and deprive Plaintiffs from receiving valuable and appropriate consideration for the use of its [sic] Property and leased equipment."

Casas Grandes filed a sworn special appearance, stating: It is a Nevada limited liability company; its "registered office" is in Nevada; it does not conduct business in Texas; it does not maintain a place of business in Texas; it has no agent for service of process in Texas; its sole member is a United Kingdom partnership; it has never entered into any contract with a Texas resident to be performed in Texas; it has never recruited a Texas resident for employment, it does not own or lease any property in Texas; and it has only two managers, one of whom is a resident of Utah and the other a resident of Chihuahua, Mexico.

## PERSONAL JURISDICTION

Although the plaintiff bears the initial burden of pleading allegations sufficient to establish personal jurisdiction, a defendant who files a special appearance assumes the burden to negate all grounds for personal jurisdiction alleged by the plaintiff. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). Whether a court has personal jurisdiction over a defendant is a question of law, but it often requires the resolution of underlying factual issues. *Id.* at 805-06. In this case, Casas Grandes did not request findings of fact. Therefore, we review the denial of the special appearance *de novo*, but we presume that the trial court resolved all factual disputes in favor of its decision. *See Coleman*, 83 S.W.3d at 806.

The Texas long-arm statute reaches as far as the United States Constitution will allow. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). Federal due process is satisfied if two requirements are met. First, the defendant must have minimum contacts with the state. *Id.* at 338. Second, the exercise of jurisdiction must comport with traditional

4

notions of fair play and substantial justice. *Id.* Casas Grandes makes no argument regarding the second requirement in its brief. We therefore focus only on whether it established minimum contacts with Texas. For specific jurisdiction, the minimum contacts analysis requires that the defendant purposefully availed itself of conducting activities in the forum state, and that the cause of action arises from or is related to those activities. *Id.*[2]

### *Casas Grandes Purposefully Availed Itself of Conducting Activities in Texas*

We must consider three issues in determining whether Casas Grandes purposefully availed itself of the privilege of conducting activities in Texas. *See id.* First, only Casas Grandes' contacts are relevant, not the unilateral activity of another party or a third person. *See id.* at 339. Second, the contacts must have been purposeful rather than random, fortuitous, or attenuated. *See id.* Third, Casas Grandes must have sought some benefit, advantage, or profit by availing itself of Texas. *See id.* We focus on the quality and nature of the contacts, rather than their number. *Id.*

Plaintiffs' petition cites several contacts that Casas Grandes had with Texas. First, Whetten lived in El Paso while negotiating the purchase of the Property. In his deposition, he admitted that he lived in El Paso from 2006 to 2009, but he had a home in Mexico at the same time. Although Whetten is a partner in the partnership that owns Casas Grandes and was a manager of Casas Grandes at one time, he resigned as manager before Casas Grandes' acquisition of Simply Goodies' assets. Because only the Defendant's contacts are relevant, rather than the unilateral activity of another party, we agree with Casas Grandes that Whetten's mere residence in El Paso is insufficient to establish that Casas Grandes purposefully availed itself of Texas.

---

[2] There are two types of personal jurisdiction--specific and general. *Retamco*, 278 S.W.3d at 338. Although Plaintiffs here assert both types, we need not address general jurisdiction because we conclude that specific jurisdiction exists.

Plaintiffs' petition also alleges that Simply Goodies had a warehouse in El Paso at 1240 Don Haskins. The petition further alleges that, on December 8, 2008, Casas Grandes and Sunrise Candy bought Simply Goodies' assets from Bridge in a non-judicial UCC foreclosure sale. At the special appearance hearing, Plaintiffs submitted a copy of an asset purchase agreement between Bridge and Casas Grandes. For each party, the agreement provides addresses where any notices or other communications required or permitted under the agreement must be made. Regarding Casas Grandes, the notice provision states:

> If to Buyer, to it at:
>
> Casa Grandes [sic] Confections, LLC
> 1800 Northwestern Drive
> El Paso, Texas 79912

In addition, a copy of any notice or communication to Casas Grandes was to be sent to a law firm located in El Paso. The assets were sold "AS-IS, WHERE-IS." Payment was to be made by wire transfer to a bank in Chicago, Illinois. The agreement includes an Illinois forum-selection clause and choice-of-law clause.

Plaintiffs additionally submitted a copy of a bill of sale, executed on December 8, 2008, wherein Casas Grandes sold all of its rights to the assets located at 1240 Don Haskins to Sunrise Candy. The bill of sale states that the assets were sold "AS-IS" and "WHERE-IS." Unlike the asset purchase agreement, the bill of sale is governed by Texas law.

Next, Plaintiffs submitted a copy of a loan agreement, also dated December 8, 2008. The first page of this document begins as follows:

**LOAN AGREEMENT**

Between

6

CASAS GRANDES CONFECTIONS, LLC        ELAMEX, S.A. de C.V.
1800 Northwestern Dr.        and        Ave. Ishikawa #9040
El Paso, Texas 79912        Cd. Juárez, Chih. Mex CP 32525

The loan agreement requires that notices be sent to the addresses provided on the first page. The agreement states that it was "executed and delivered in the State of Texas, shall be governed by and construed in accordance with the laws of the State of Texas, and shall be performable by the parties hereto in the county in Texas where the Lender's address set forth on the first page hereof is located."[3] The purpose of the loan evidenced by this agreement was to finance Casas Grandes' purchase of Simply Goodies' assets.

Finally, Plaintiffs submitted an option contract, dated December 31, 2008, between Casas Grandes and MFF. This contract gives MFF the option to purchase some of the Simply Goodies assets that Casas Grandes obtained from Bridge (presumably, the Mexican assets). The contract requires that notices to Casas Grandes be sent to its address in Woods Cross, Utah. The choice-of-law clause provides that Texas law controls.

Based on the addresses provided in the asset purchase agreement and the loan agreement, Plaintiffs contend that Casas Grandes maintains an office in El Paso. Casas Grandes argues that there is no evidence that it actually conducted business at the address listed in these documents. Casas Grandes also relies on its sworn special appearance, which states that it does not maintain a place of business in Texas.

We conclude that the trial court could have inferred from the asset purchase agreement and the loan agreement that Casas Grandes has some sort of office in El Paso. In the asset purchase

---

[3] The last part of this sentence does not make sense because the lender's address on the first page is the Mexican address of Elamex Mexico.

agreement, the El Paso address appears as the address of Casas Grandes itself, not the address of an agent. The agreement states that notice must be sent to Casas Grandes "to *it* at" the El Paso address. [Emphasis added.] A copy was to be sent to its El Paso attorneys. Similarly, the loan agreement states that it is between Elamex Mexico and Casas Grandes Confections, LLC, followed by an El Paso address. This too appears as the address of Casas Grandes rather than an agent. The option contract gives a non-Texas address for Casas Grandes, and the sworn special appearance states that Casas Grandes does not have a place of business in Texas. Thus, the trial court was presented with a factual dispute as to whether Casas Grandes has an office in Texas. Given its denial of the special appearance, we presume the court resolved this dispute in favor of an implied finding that Casas Grandes does maintain an office here.[4]

In addition to indicating that Casas Grandes has an office here, the contracts discussed above demonstrate that Casas Grandes purposefully availed itself of conducting activities in Texas in other ways. The loan agreement recites that it was executed and delivered in Texas and was performable in Texas. At least three of the contracts relate to the buying and selling of assets located in this state. The assets were bought and sold "where is." Moreover, three of the contracts contain Texas choice-of-law clauses. *See Internet Advertising Group, Inc. v. Accudata, Inc.*, 301 S.W.3d 383, 390 (Tex.App.--Dallas 2009, no pet.)("A choice of law provision warrants some weight in considering whether a defendant has purposefully invoked the benefits and

---

[4] It has been noted that a company subjects itself to general jurisdiction by maintaining an office in the forum state. *See PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007). That is certainly true when the defendant uses the office extensively for company business. *See id.* at 167-68 (discussing *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). In this case, there is no evidence regarding how Casas Grandes used its El Paso office. Therefore, we do not believe the office conclusively establishes general jurisdiction. We consider it only as one of several factors establishing specific jurisdiction.

protection of a state's law for jurisdictional purposes; however, such a provision standing alone is not sufficient to confer jurisdiction.").

In summary, the evidence shows that Casas Grandes has an office in this state, that it bought and sold personal property located in this state, that it entered into contracts concerning that property, and that it chose this state's laws to govern some of the contracts. These are the contacts of Casas Grandes itself, not a third party. They were purposeful rather than random, fortuitous, or attenuated. And Casas Grandes obviously expected some benefit, advantage, or profit from buying and selling the assets. We therefore conclude that Casas Grandes purposefully availed itself of conducting activity in Texas. *See Trigeant Holdings, Ltd. v. Jones*, 183 S.W.3d 717, 728 (Tex.App.--Houston [1st Dist.] 2005, pet. denied)("By participating in a Texas transaction involving the transfer of Texas-based assets to allegedly defraud a Texas resident, the Trigeant Holdings entities purposefully availed themselves of the benefits and privileges of conducting business in Texas.").

### *This Suit Arises From, Or Is Related To, Casas Grandes' Texas Activities*

Purposeful availment will not support an exercise of specific jurisdiction unless the defendant's liability arises from or relates to its contacts with the forum. *Retamco*, 278 S.W.3d at 340. There must be a substantial connection between the forum contacts and the operative facts of the litigation. *Id.* We consider the claims involved in the litigation to determine the operative facts. *Id.*

Casas Grandes asserts that the operative facts that will be the focus of the trial are those surrounding Defendants' alleged interference with Dulces Blueberry's payment of rent to Dulces Arbor and Defendants' use of the C Leasing equipment. Casas Grandes contends that there is no

9

connection between these facts and Casas Grandes' contracts regarding the purchase and sale of Simply Goodies' assets. According to Casas Grandes, Plaintiffs do not seek damages from Casas Grandes for depriving them of whatever interest they may have had in Simply Goodies' assets. Instead, they only seek rent for use of the Property and the C Leasing equipment.

Casas Grandes' reading of the petition is overly restrictive. In their fraud claim, Plaintiffs allege that Defendants induced them to undertake negotiations for sale of the Property, "when, in fact, they had . . . no intention of performing the agreements and were, instead, intending to acquire the Simply Goodies assets, operate out of the Property for no consideration and deprive Plaintiffs from receiving valuable and appropriate consideration for the use of its [sic] Property and leased equipment." The petition also states that Defendants "schemed such that DULCES ARBOR, although required to be notified about the foreclosure sale according to the UCC, were [sic] intentionally never notified of the sale intentionally depriving DULCES ARBOR of its legal rights." The paragraph labeled "Damages," states, "Defendants are liable for the damages caused by their conduct and actions described above in a sum exceeding $2,000,000, plus pre- and post-Judgment interest." Thus, Plaintiffs allege that one of the objects of the fraud perpetrated against them was for Defendants to obtain Simply Goodies' assets. One of the ways in which this object was accomplished was by depriving Plaintiffs of notice of the foreclosure sale. Although part of the trial will focus on the events that occurred at the Property in Mexico, the part of the trial that concerns Casas Grandes will focus on its purchase of Simply Goodies' assets. Because Casas Grandes' contacts with Texas relate to these assets, there is a substantial connection between the forum contacts and the operative facts of Plaintiffs' claims. *See Retamco*, 278 S.W.3d at 340-41 (holding that suit arose from alleged fraudulent transfer of real property located in Texas even

10

though the allegedly fraudulent assignment occurred in California). Furthermore, the generic damages paragraph, quoted in full above, does not limit damages to lost rent, but reasonably encompasses damages for all of the allegedly tortious conduct of Defendants. We therefore conclude that this suit arises from or relates to Casas Grandes' contacts with Texas.

## CONCLUSION

We overrule Casas Grandes' appellate issues and affirm the order denying the special appearance.

May 2, 2012

CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Antcliff, J., and Chew, C.J. (Senior)
Chew, C.J. (Senior)(Sitting by Assignment)

11