COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MICHAEL KEENAN, a/k/a | § | |
| MIKE KEENAN, d/b/a | § | No. 08-11-00330-CV |
| SOUTHWEST MOTORSPORTS, | § | |
| | § | Appeal from the |
| Appellant, | § | |
| | § | 168th Judicial District Court |
| v. | § | |
| | § | of El Paso County, Texas |
| TONY AGUILAR, | § | |
| | § | (TC#2011-02156) |
| Appellee. | § | |

**O P I N I O N**

Appellant, Michael Keenan, doing business as Southwest Motorsports ("Keenan"), appeals from the denial of his special appearance.   We affirm.

**BACKGROUND**

Keenan, a non-resident of Texas, owns Southwest Motorsports, a retail car and RV dealership, located in Albuquerque, New Mexico.   In October 2010, Appellee, a resident of El Paso County, Texas, found a sales advertisement for a "1998 Safari Continental Diesel pusher DAMAGED MOTORHOME" which Keenan had placed on eBay.   The eBay advertisement indicated the vehicle had a salvage title and described the motorhome as being in "great condition, inside and out" with "[n]o repairs needed."   Appellee placed a $30,100 bid on eBay to purchase

the vehicle and won.[1]   Appellee emailed Keenan to obtain more information about purchasing the vehicle and to find out if there were any mechanical problems he should know about.   In response to Appellee's email, Keenan stated that the motorhome had no problems and provided him with a mailing address for payment purposes.

On at least two occasions, Appellee and Keenan spoke over the phone to discuss the condition of the motorhome.   In accordance with Keenan's instructions, Appellee wire-transferred money to Keenan's bank in Albuquerque and then traveled to Albuquerque to pick up the motorhome.[2]   In Albuquerque, Keenan allegedly reassured Appellee there was nothing wrong with the motorhome and Appellee signed a purchase contract.

Upon returning to El Paso, Appellee took the motorhome to Truck Enterprises for minor repairs.   While the motorhome was being repaired, Truck Enterprises found a number of mechanical problems and, as a result, Appellee paid $7,050.85 in repair costs.[3]   Appellee subsequently took the vehicle to Camping World for an inspection.   The inspection revealed other problems with the motorhome which were fixed at a cost of $5,201.40.[4]

Appellee thereafter sued Keenan in El Paso County, Texas on May 27, 2011, for violations of the Texas Deceptive Trade Practices Act.   Keenan filed a special appearance challenging

---

[1] When a seller places an item for sale on eBay, the seller sets the initial minimum bid and the closing date of the online auction.   *Action Tapes, Inc. v. Weaver*, No. Civ. 3:05-CV-1693-H, 2005 WL 3199706, at *2 (N.D. Tex. Nov. 23, 2005).   Buyers then place bids on the advertised item through eBay and, at the close of the auction, the highest bidder wins the item.   *Id*.   eBay then places the seller and winning bidder in contact through email to make payment and delivery arrangements.   *Id*.

[2] In Keenan's First Amended Special Appearance, Keenan asserted a wire transfer was not made to him as he was paid by cashier's check.   However, a copy of the cashier's check attached to the amended pleading shows that it was made in an amount less than the contracted purchase price.

[3] The alleged mechanical problems included cracked bell housing, a leaky front hub seal, and broken struts on the engine compartment.

[4] Appellee's original petition states that the RV's rearview camera and monitor did not work.   Appellee's petition also references other repair costs incurred as well as costs for repairs that are yet to be made.

personal jurisdiction and an original answer subject to his special appearance. Appellee argues that jurisdiction was proper because Keenan: (1) advertised the motorhome on eBay; (2) conducted email correspondence with Appellee; (3) spoke with Appellee on the telephone on at least two occasions; (4) accepted a wire transfer from Appellee's bank in Texas; and (5) told Appellee that he bought and sold motorhomes in Texas, and had purchased the motorhome in Longview, Texas. The trial court allowed Appellee to depose Keenan before considering Keenan's special appearance.[5] After a hearing, the trial court denied the special appearance, and this appeal followed.

## DISCUSSION

In his sole issue on appeal, Keenan asserts that the trial court erred by denying his special appearance because Keenan's conduct in this case was insufficient to establish minimum contacts with Texas necessary to confer jurisdiction over him.

### *Standard of Review*

We review the trial court's decision on a special appearance *de novo. Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 794 (Tex. 2002). The plaintiff in a suit against a nonresident defendant bears the initial burden of pleading sufficient allegations to bring the defendant within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.,* 301 S.W.3d 653, 658 (Tex. 2010). Once the plaintiff's burden is met, the burden of proof shifts to the nonresident defendant, who must then negate all possible grounds for personal jurisdiction alleged by the plaintiff. *Id.*; *BMC Software,* 83 S.W.3d at 793.

---

[5] While Keenan attached a copy of his deposition transcript to his brief, this is not part of the appellate record and cannot be considered. *Fox v. Wardy*, 234 S.W.3d 30, 33 (Tex. App. – El Paso 2007, pet. dism'd); *see* TEX. R. APP. P. 34.1.

3

However, in deciding the jurisdictional question, the trial court must frequently resolve fact questions. *BMC Software,* 83 S.W.3d at 794; *Assurances Generales Banque Nationale v. Dhalla,* 282 S.W.3d 688, 694–95 (Tex. App. – Dallas 2009, no pet.). Therefore, when a trial court does not issue findings of fact and conclusions of law in support of its order granting or denying a special appearance, all facts supported by the evidence that are necessary to support the order and supported by the evidence are implied. *See Moki Mac,* 221 S.W.3d at 574; *BMC Software,* 83 S.W.3d at 795; *Dhalla,* 282 S.W.3d at 695.

## PERSONAL JURISDICTION[6]

Personal jurisdiction refers to a court's power to bind a particular person or entity. *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex. 1996). Texas courts may assert personal jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moki Mac,* 221 S.W.3d at 574; *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex. 2002). The Texas long-arm statute authorizes jurisdiction over a nonresident "doing business" in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2008).

A nonresident does business in Texas if the nonresident: (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in Texas; (2) commits a tort in whole or in part in Texas; or (3) recruits Texas residents for employment inside or outside Texas. *See id*. The Texas long-arm statute permits personal jurisdiction over a nonresident to reach "as far as the federal constitutional requirements of due process will allow." *Am. Type Culture Collection*, 83 S.W.3d at 806. Federal due process is

---

[6] There are two types of personal jurisdiction—specific and general. *Retamco Operating Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). Because Appellee does not argue that the trial court has general jurisdiction over Keenan, we confine our review to specific jurisdiction.

4

satisfied when: (1) the defendant has minimum contacts with Texas; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See Retamco*, 278 S.W.3d at 338.[7]

Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific jurisdiction or general jurisdiction. *BMC Software*, 83 S.W.3d at 795. Specific jurisdiction is established if the nonresident defendant's liability arises out of or is related to an activity conducted within the forum. *Moki Mac,* 221 S.W.3d at 575-76; *BMC Software*, 83 S.W.3d at 796. "For specific jurisdiction, the minimum contacts analysis requires that the defendant purposefully availed itself of conducting activities in the forum state, and that the cause of action arises from or is related to those activities." *Casas Grandes Confections, LLC v. Arbor*, 367 S.W.3d 872, 875 (Tex. App. – El Paso 2012, no pet.). The purpose of the minimum-contacts analysis is to protect the nonresident defendant from being haled into a Texas court when his relationship with Texas is too attenuated to support jurisdiction. *Am. Type Culture Collection*, 83 S.W.3d at 806. When a nonresident defendant purposefully avails itself of the privileges and benefits of conducting business in Texas it is amenable to suit in Texas. *Id*.

To establish specific jurisdiction, we only consider the nonresident's own contacts with Texas, not the unilateral activities of third parties. *Id.*; *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784-85 (Tex. 2005). Additionally, it is the quality and nature of the nonresident defendant's contacts, rather than the number of contacts that are of significance to the minimum-contacts analysis. *Am. Type Culture Collection*, 83 S.W.3d at 806. Whether the nonresident defendant's activities consist of contacts inside or outside of Texas, they must warrant

---

7 Because Keenan's appellate brief fails to address the second requirement, we only address whether Keenan established minimum contacts with Texas.

5

a conclusion that he could reasonably anticipate being called into a Texas court. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Am. Type Culture Collection*, 83 S.W.3d at 806. When the contacts are merely random, fortuitous, or attenuated, the nonresident defendant is not subject to Texas jurisdiction.

Keenan argues that Appellee has failed to proffer the evidence needed to establish minimum contacts for specific jurisdiction and that he did not purposefully avail himself of the privilege of doing business in Texas. Specifically, he asserts that merely selling an item through an eBay listing is insufficient to establish minimum contacts with Texas. In response, Appellee contends Keenan purposefully availed himself of the privilege of conducting activities within Texas by advertising and selling the motorhome on eBay and that Keenan's contacts arising from internet use were sufficient to establish personal jurisdiction. The parties agree that eBay is an interactive website for purposes of the "sliding scale" analysis courts often use to determine whether jurisdiction over a nonresident defendant exists based on the nonresident's use of the internet. *See Choice Auto Brokers, Inc. v. Dawson*, 274 S.W.3d 172, 177-78 (Tex. App. – Houston [1st Dist.] 2008, no pet.); *I & JC Corp v. Helen of Troy, L.P.*, 164 S.W.3d 877, 888-89 (Tex. App. – El Paso 2005, pet. denied). For purposes of establishing personal jurisdiction, Internet use is separated into three categories on a sliding scale. *I & JC Corp*, 164 S.W.3d at 888.

At one end of the sliding scale are websites "clearly used for transacting business over the internet," like entering into contracts and knowing and repeated transmission of files of information, which can establish sufficient minimum contacts with a state. *Id.* At the other end of the scale are "passive" websites used only for purposes of advertising online and which are not sufficient to establish minimum contacts although the websites can be accessed by residents of a

6

particular state. *Id.* In the middle of the scale, are "interactive" websites that allow a potential customer and a host computer to engage in an "exchange" of information. *Id.* at 888-89. When personal jurisdiction is based on a nonresident defendant's use of eBay, an "interactive" website, we must look beyond the internet activity to the degree of interaction between the parties, for purposes of establishing personal jurisdiction. *Karstetter v. Voss*, 184 S.W.3d 396, 405 (Tex. App. – Dallas 2006, no pet.); *I & JC Corp*, 164 S.W.3d at 888-89.

Specific jurisdiction exists when the nonresident defendant's activities have been "purposefully directed" to the forum state and the litigation results from injuries arising out of or relating to those activities. *Commonwealth Gen. Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005). We focus our analysis on the issue of whether Keenan's contacts with Texas are sufficient to subject him to specific jurisdiction. The record reflects that the parties corresponded through two emails and had at least two telephone conversations. Although the number of contacts occurring in Texas were limited, they were significant. Furthermore, Appellee's claim arises from or is related to those contacts. *Casas Grandes*, 367 S.W.3d at 875.

Specifically, the record shows that Keenan made two misrepresentations in Texas. First, in his email response to Appellee in Texas, Keenan stated that the motorhome had no problems. Second, when Keenan spoke to Aguilar on the phone he indicated that the motorhome needed no repairs and that the only problem was some water damage. There is also evidence that Keenan told Appellee that he purchased the motorhome in Texas and drove it from Texas to New Mexico. Additionally, the evidence reflects that Keenan had bought and sold other motorhomes in Texas. The record further shows that Appellee made a wire transfer from his bank in Texas to Keenan's bank in Albuquerque pursuant to Keenan's instructions to Appellee and as required by the terms

7

on eBay.[8] Once Appellee won the bid for the motorhome and the parties made contact by email and telephone, Appellee was required to partially perform in Texas under the terms of Keenan's eBay advertisement by making a $2,000 deposit to Keenan, as such, Keenan "purposefully directed" his activities to Texas.

Here, Keenan's contacts with Texas relate to the sale of the motorhome at issue. *Moki Mac,* 221 S.W.3d at 575-76; *BMC Software*, 83 S.W.3d at 796. There is a substantial connection between Keenan's contacts with Texas and the operative facts of Appellee's claims. *See Retamco*, 278 S.W.3d at 340-41. The degree of interaction between the parties and Keenan's actions support the trial court's implied findings that Keenan was "doing business" in Texas and that his alleged liability arises from or is related to doing business in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1) (West 2008); *Moki Mac,* 221 S.W.3d at 575-76; *BMC Software*, 83 S.W.3d at 796. We conclude the trial court did not err in denying Keenan's special appearance because Appellee's claims relate to or arise from Keenan's contacts with Texas, such that the trial court could exercise specific jurisdiction over Keenan. Issue One is overruled.

## CONCLUSION

We affirm the order of the trial court denying Appellant's special appearance and remand to the trial court for trial on the merits.


GUADALUPE RIVERA, Justice

December 21, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.

---

[8] On the eBay advertisement a $2,000 deposit was required within 48 hours of the auction close.

8