**Affirmed and Opinion filed March 26, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00181-CV

## WALLER MARINE, INC., Appellant

## V.

## SCOTT M. MAGIE AND THE POWER IN.COM, LLC, Appellee

**On Appeal from the 61st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-10064**

## O P I N I O N

Appellant Waller Marine, Inc. filed suit asserting breach of contract and other claims against Manning Industries, Inc. ("MII"), Miles Edwin Manning, Julia Thompson Manning, Scott Magie, and The Power in.com, LLC ("TPIC"). Appellees Magie and TPIC are not Texas residents and filed a special appearance, which the trial court granted. In its sole issue, Waller argues the trial court erred in granting the special appearance in light of appellees' numerous contacts with Texas. We hold the trial court's order granting appellees' special appearance was not erroneous because there is no substantial connection between the operative

facts of Waller's claims and appellees' contacts with Texas. We therefore affirm.

## BACKGROUND

Waller's amended petition and the evidence attached to the special appearance filings provide the following background regarding the parties' dispute. Waller is a Texas corporation. In 2010, Waller agreed to construct two floating power plants for CITGO. The plants were to be used in Venezuela. CITGO wanted power plants capable of running on both natural gas and liquid fuel, but it had a prompt deadline.

Waller determined that there was insufficient time to order a dual-fuel turbine—meaning one capable of running on both natural gas and liquid fuel— from an original manufacturer. Thus, Waller decided to obtain a gas turbine and perform a dual-fuel conversion, a process that would make the turbine capable of running on both types of fuel. Subsequently, Waller entered into a services contract with MII, a Texas corporation. Under the agreement, MII was to provide technical expertise, labor, materials, equipment, and oversight for three projects: (1) three site change studies,[1] (2) two dual fuel conversions, and (3) two TIL installations.[2] The contract called for $19,150,000 in payment. Waller advanced MII $15,890,000.

TPIC agreed to provide consulting services to MII on its contract with Waller. TPIC is a South Dakota Limited Liability Company that acquires power plants and equipment. TPIC's principal place of business is in Sioux Falls, South Dakota. Magie is the owner and sole member of TPIC. He resides in Park City,

---

[1] The number of site change studies was subsequently reduced to two. Waller claims it is entitled to a credit as a result.

[2] This involved installing upgrades and retrofits to bring the two turbine units to the operating condition set forth in the manufacturer's Technical Information Letters.

2

Utah and Ely, Minnesota. He does not reside in Texas. Neither Magie nor TPIC maintains a regular place of business in this state.

MII failed to complete the dual fuel conversions and did not perform any TIL installations, forcing Waller to take over these projects to meet CITGO's deadline. Waller then filed suit against MII and its officers, Miles and Julia, for breach of contract.[3] Waller later filed an amended petition joining Magie and TPIC as defendants and adding claims of fraud, unjust enrichment, and money had and received. Waller contended that MII, Miles, Magie, and TPIC entered into an association to carry on a business for profit as co-owners. Waller argued that a partnership thus existed between MII, Miles, and Magie, and that as a result, Magie was personally liable for the debts and liabilities of MII and Miles. In its amended petition, however, Waller did not allege that TPIC was liable as a partner in the partnership. Furthermore, Waller did not sue the purported partnership.

In response, Magie and TPIC filed a special appearance under Texas Rule of Civil Procedure 120a, objecting that Texas courts lacked personal jurisdiction over them. The trial court held a non-evidentiary hearing on the special appearance and subsequently granted it as to both Magie and TPIC. This interlocutory appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (West 2015).

---

[3] Waller alleges that under Section 171.309 of the Texas Tax Code, MII's corporate charter was forfeited for failure to pay state franchise taxes and that Miles and Julia—as corporate officers—are personally liable for the debts of the company. *See* Tex. Tax Code § 171.255 (West 2008).

ANALYSIS

**I.     The trial court did not err in granting Magie's and TPIC's special appearances.**

**A.     Standard of review and applicable law**

Waller contends the trial court erred in granting Magie's and TPIC's special appearances. A specially appearing defendant has the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). Whether a trial court has personal jurisdiction over a defendant is a question of law that we review de novo, but the trial court frequently must resolve questions of fact before deciding the question of jurisdiction. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). When, as here, a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all findings necessary to support the judgment and supported by the evidence are implied, though the sufficiency of the record evidence to support those findings may be challenged on appeal. *Id.* at 795.

Texas courts may assert personal jurisdiction over a nonresident if the Texas long-arm statute authorizes the exercise of personal jurisdiction and the exercise is consistent with federal and state constitutional due-process guarantees. *E.g.*, *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The Supreme Court of Texas has consolidated these inquiries, holding that the Texas long-arm statute's broad language allows Texas courts to exercise personal jurisdiction as far as the Due Process Clause of the Federal Constitution permits. *BMC*, 83 S.W.3d at 795 (citing *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex. 1977).[4] The

---

[4] The Texas long-arm statute provides, in relevant part, that in addition to other acts that may constitute doing business, a nonresident does business in the state if the nonresident (1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state, or (2) commits a tort in whole or in part in this state. Tex. Civ.

requirements of the Texas long-arm statute are thus fulfilled if an assertion of personal jurisdiction is consistent with federal due-process limitations. *See Moki Mac*, 221 S.W.3d at 575.

Due process is satisfied when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Minimum contacts exist when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005).

There are three components to the "purposeful availment" inquiry. *Michiana*, 168 S.W.3d at 784–85. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person. *Id.* at 785. Second, the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated. *Coleman*, 83 S.W.3d at 806. Lastly, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Michiana*, 168 S.W.3d at 785. A defendant may purposefully avoid a particular forum by structuring its transactions in such a way as to neither profit from the forum's laws nor subject itself to the forum's jurisdiction. *Moki Mac*, 221 S.W.3d at 575 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

A nonresident defendant's purposeful contacts with the forum state may give

---

Prac. & Rem. Code Ann. § 17.042(1)–(2) (West). Appellees dispute that Waller met its initial burden of pleading allegations sufficient to confer jurisdiction under the long-arm statute. We need not decide that question, however, given our holding that Waller has neither alleged facts nor offered evidence showing the constitutionally-required substantial connection between its claims and appellees' Texas contacts.

rise to general or specific jurisdiction.[5]  *BMC*, 83 S.W.3d at 795–96.  Specific jurisdiction is established if the claims in question arise from or relate to the defendant's purposeful contacts with Texas.  *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).  In conducting a specific-jurisdiction analysis, we focus on the relationship among the defendants, the forum, and the litigation. *Id.*  For a nonresident defendant's contacts with Texas to support an exercise of specific jurisdiction, there must be a substantial connection between all of the defendant's contacts with the forum state and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585; *see also Kelly*, 301 S.W.3d at 655.

Generally, a specific-jurisdiction analysis should be performed on a claim-by-claim basis.  *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013).  When separate claims are based on the same forum contacts, however, a separate analysis of each claim is not required.  *Id.* at 150–51.

### B. There is no substantial connection between either Magie's or TPIC's contacts with Texas and the operative facts of the litigation.

In this case, Waller asserts claims in its amended petition for (1) breach of contract by MII; (2) fraud by MII and Miles; (3) money had and received by MII and Miles; and (4) unjust enrichment based on overpayment to MII and Miles. Waller asserts none of these claims against Magie or TPIC.  Instead, Waller alleges that Magie and TPIC formed a partnership with MII and Manning, and that Magie is responsible for the debts and liabilities of the partnership.  Waller does not allege that TPIC is responsible for such liabilities, however.

In an effort to demonstrate specific jurisdiction over Magie and TPIC, Waller contends that Magie and TPIC made numerous contacts with Texas and

---

[5] General jurisdiction is not at issue in this case.

asserts there is a substantial connection between those contacts and the operative facts of the litigation because Magie's and TPIC's contacts concerned their work on the services contract between Waller and MII. Waller offered evidence of three meetings in Houston at which Magie was present. It further points to evidence that Magie and TPIC coordinated the shipment of equipment parts from Memphis to Orange, Texas via email, worked with Waller and MII to perform an inventory check and inspection of equipment stored in Orange, and coordinated with a third party to do conversion work in Texas. Waller notes that Magie controlled the accounting portion of MII's contract with Waller and sent emails to MII in that regard.

Waller contends the operative facts of the litigation will also include proof of Magie's and TPIC's partnership with Texas residents MII and Manning so that Waller can obtain a judgment against Magie and TPIC as partners.[6] Waller relies on *Zac Smith & Co. v. Otis Elevator Co.*, 734 S.W.2d 662 (Tex. 1987), for the contention that a partnership is one contact the court may consider in its jurisdictional analysis. Appellees dispute the existence of a partnership and counter that none of Waller's claims are based on Magie's and TPIC's contacts with Texas.

We begin our analysis with Waller's partnership-based jurisdictional arguments. Although we agree that a partnership with a Texas resident may give rise to relevant jurisdictional contacts, the existence of the partnership itself is not dispositive. Whether the parties' agreement created a partnership bears upon the question of liability for the alleged breach, not upon the question of jurisdiction.

---

[6] *See* Tex. Bus. Orgs. Code Ann. § 152.306(a) (West 2012) ("A judgment against a partnership is not by itself a judgment against a partner. A judgment may be entered against a partner who has been served with process in a suit against the partnership."); *Am. Star Energy & Min. Corp. v. Stowers*, No. 13-0484, __ S.W.3d __, 2015 WL 859277, at *2 (Tex. Oct. 14, 2014) (discussing enforcement of partnership liability against partner).

7

*See Zac Smith*, 734 S.W.2d at 666; *Gordon & Doner, P.A. v. Joros*, 287 S.W.3d 325, 334 (Tex. App.—Fort Worth 2009, no pet.) ("Whether Gordon entered into a joint venture with Bailey or otherwise retained joint responsibility for Bailey's conduct in Texas is relevant only to Gordon's liability on the merits. It does not constitute purposeful availment by any activities by Gordon in Texas so as to establish minimum contacts."); *see also PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 174–75 (Tex. 2007) (noting personal jurisdiction involves due process considerations that may not be overridden by statutes or the common law and distinguishing factors relevant to piercing the corporate veil for liability purposes from those relevant to minimum contacts); *Langston, Sweet & Freese, P.A. v. Ernster*, 255 S.W.3d 402, 410 (Tex. App.—Beaumont 2008, pet. denied) (holding actions of one partner may be imputed to partnership for personal jurisdiction purposes but are not, without more, imputed to other partners). Moreover, we note that Waller has not yet sued the alleged partnership in this case, nor has it explained why it may proceed directly against other partners without doing so.[7] For these reasons, we conclude that the alleged formation of a partnership with Texas residents will not support specific jurisdiction over TPIC or Magie.

Instead, the focus of our jurisdictional analysis must be on what Texas contacts TPIC and Magie made while working for this alleged partnership on the services contract between Waller and MII, and whether those contacts are substantially connected to Waller's causes of action. We agree with the trial court's implied finding that the necessary substantial connection is lacking.

With respect to TPIC, it is significant that Waller does not allege TPIC is

---

[7] *See* Tex. Bus. Orgs. Code Ann. § 152.306(c) (West 2012) (delineating the circumstances in which a creditor may proceed directly against one or more of the partners without first seeking satisfaction from partnership property).

liable on any of Waller's causes of action. After alleging the existence of a partnership including TPIC as well as Magie, the petition concludes that "[a]s a partner, Magie is personally liable for the debts and liabilities of both [MII] and Miles Manning individually with respect to the partnership's 'affairs.'" Though Waller argues it has asserted a claim against TPIC for partnership liability, even under a liberal construction of Waller's petition, we conclude that, though Waller has named TPIC as a defendant, Waller has not asserted any claims against TPIC. Therefore, any contacts between TPIC and Texas are not substantially connected to the operative facts of the litigation. Accordingly, we hold the trial court did not err in granting TPIC's special appearance.[8]

We likewise hold that the trial court did not err in granting the special appearance as to both Magie and TPIC because their purposeful contacts with Texas did not have a substantial connection to the operative facts of any of Waller's claims.[9] In its briefs to this Court, Waller makes a blanket assertion that Magie and TPIC provided substandard services and that these substandard services ultimately contributed to MII's failure to perform. That failure, Waller argues, forms the basis of each one of its claims, and therefore the purportedly substandard services are substantially connected to Waller's causes of action. During oral argument, Waller made references to appellees' ongoing course of conduct as a cause of its claims.

---

[8] Moreover, even if Waller's petition could be read to allege that TPIC (like Magie) is liable as a partner, the court still did not err in granting the special appearance for the reasons we discuss in the following paragraphs.

[9] Waller does not distinguish between contacts made by Magie and contacts made by TPIC. Magie and TPIC argue that although the acts of a corporate representative may be imputed to the corporation, the converse is not true. Waller contends that because appellees' contacts are identical, they may be considered together. Because we hold that there is no substantial connection between Magie's and TPIC's contacts with Texas and the operative facts of this case, we need not consider the merits of these arguments.

Waller's general references on appeal to appellees' "substandard services" and "ongoing course of conduct" are insufficient to show a substantial connection between the appellees' contacts with the state and the operative facts of the litigation. Waller's amended petition states that MII breached the contract by failing to obtain the necessary equipment and parts. But Waller has not alleged in its petition that Magie or TPIC provided substandard services, nor that any of appellees' Texas contacts gave rise to MII's breach.[10] *See Kelly*, 301 S.W.3d at 660–61.

Similarly, appellees' contacts are not substantially connected with Waller's claims of unjust enrichment and money had and received. In its petition, Waller bases these claims on money Waller paid to MII and Miles. In contrast, any payments received by Magie and TPIC stemmed from TPIC's consulting services contract with MII.

Finally, Waller alleges that MII and Miles committed fraud when they declared they would perform the three projects detailed in the services contract. At the time these representations were made, however, Magie and TPIC were not working with MII. Magie and TPIC agreed to provide consulting services to MII after MII reached its agreement with Waller. Thus, Magie's and TPIC's subsequent contacts with Texas lack a substantial connection to the alleged fraud.

Waller relies on *Casas Grandes Confections, LLC v. Arbor*, 367 S.W.3d 872 (Tex. App.—El Paso 2012, no pet.), to argue that we should not read the petition restrictively when applying the substantial-connection test. *Casas Grandes* does not bear the weight Waller places on it. In *Casas Grandes*, the petition in fact contained allegations of wrongdoing by the defendants. *See, e.g.*, *Id.* at 875 ("The

---

[10] During the hearing on the special appearance, Waller conceded it did not have a contract with Magie or TPIC.

petition asserts several causes of action. Most importantly for purposes of this appeal, the petition alleges that the Defendants committed fraud"); *see also id.* at 878 ("In their fraud claim, Plaintiffs allege that Defendants induced them to undertake negotiations for sale of the Property, 'when, in fact, they had . . . no intention of performing the agreements and were, instead, intending to acquire the Simply Goodies assets, operate out of the Property for no consideration and deprive Plaintiffs from receiving valuable and appropriate consideration for the use of its [sic] Property and leased equipment.'"); *id.* at 878–79 ("The petition also states that Defendants 'schemed such that DULCES ARBOR, although required to be notified about the foreclosure sale according to the UCC, were [sic] intentionally never notified of the sale intentionally depriving DULCES ARBOR of its legal rights.'"); *id.* at 879 ("The paragraph labeled 'Damages,' states, 'Defendants are liable for the damages caused by their conduct and actions described above'). In its amended petition, by contrast, Waller does not allege any wrongdoing by Magie or TPIC.

Waller also advocates a theory of jurisdiction by profit. Waller asserts that when a defendant agrees to perform services in Texas and anticipates a profit from those services, it is subject to jurisdiction in Texas. Waller then notes that Magie and TPIC profited substantially from their work on the Waller project, arguing that they are therefore subject to the jurisdiction of Texas courts.[11] Assuming without deciding that Magie provided services in Texas, those Texas contacts nevertheless must have a substantial connection to the operative facts of the litigation. *See Moki Mac,* 221 S.W.3d at 585.

The cases cited by Waller are distinguishable. For example, in *Zac Smith,*

---

[11] Waller provided evidence that after it sent a payment of $4,077,796.72 to MII, Miles wired $1.176 million to TPIC's account.

the project was wholly performable in Texas. *See Zac Smith*, 734 S.W.2d at 665–66 ("The purpose of the joint venture was wholly performable in Texas and the contract with Double W, the property owner, was wholly performable in Texas. The parties anticipated a profit from the construction of the hotel in Texas, and the benefits and protections of the laws of this State, as well as the City of Austin, were called into play"). To the extent any cases cited by Waller do not require a substantial connection between the non-resident defendant's contacts and the operative facts of the litigation, they have been overturned. *See Moki Mac*, 221 S.W.3d at 585. Because that connection is lacking here, we overrule appellant's sole issue.

## CONCLUSION

Having overruled appellant's sole issue, we affirm the trial court's order.

/s/ J. Brett Busby
   Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby.

12