

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-14-00348-CV

KKT INTERNATIONAL, LTD.    APPELLANT

V.

SMARTWISE INTERNATIONAL,    APPELLEES
LTD., SALENA CHEN, DARRYL
CHEN, AND MONICA CHEN

----------

## FROM THE 352ND DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 352-268612-13

----------

## MEMORANDUM OPINION[1]

----------

In this appeal we are asked to review a trial court's order sustaining a special appearance by a nonresident corporation and its board of directors. Because the parties' contract did not contain an enforceable forum-selection clause and because the nonresident corporation and its directors did not have

---

[1]*See* Tex. R. App. P. 47.4.

sufficient minimum contacts with Texas to justify the exercise of personal jurisdiction by Texas state courts, we affirm the trial court's order.

## I. BACKGROUND

Appellant KKT International, Ltd., a Barbadian corporation, sells and distributes patented medical equipment. KKT's parent company is Optima Health Solutions International Corporation, a Canadian corporation that sells its own patented medical devices. Appellee Smartwise International, Ltd., a Hong Kong corporation, markets medical devices and services in Asia. Appellees Monica Chen, Salena Chen, and Darryl Chen (collectively, the Chens) are the only members of Smartwise's board of directors, and Monica owns 100% of Smartwise. Smartwise, in turn, owns 10% of Optima. Smartwise acts only through its board of directors—the Chens. Monica resides in Hong Kong, Darryl resides in Washington, and Salena resides in Canada. Monica and Salena have never been to Texas, and Darryl was last in Texas in 2012 to attend a wedding.

Optima created a medical device that diagnosed the cause of back pain (the diagnostic device) and applied with the Federal Drug Administration (FDA) for approval to sell it. One of the reasons Smartwise invested in Optima was because of the pending FDA approval for the diagnostic device.

On February 23, 2011, Smartwise and KKT signed a "Letter of Agreement," under which Smartwise agreed to market KKT's products— specifically, "KKT Beds, X-ray frame and chair"—in China in exchange for a "commission of one third of Royalties and mark-up on KKT Device, accessories

2

and its supportive and related products and services into and out of [China]." Smartwise also agreed to "[a]ssist in Chinese regulatory filling [sic]." The agreement provided that "[t]his agreement will be bound by the courts and rules, as governed in USA in case of arbitration or disputes" (the governance clause). After KKT allegedly received no royalties "due either to Smartwise's inability to properly provide sales support to the third party [buyer in China], or due to non-remittal of two-thirds of the royalties paid by the third party [to Smartwise]," KKT sued Smartwise and the Chens in a Texas state court in Tarrant County over the letter agreement, raising claims for fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty, unlawful self-dealing, breach of the duty of care, conversion, promissory estoppel, and unjust enrichment. KKT alleged that the trial court had personal jurisdiction over the parties based on the governance clause. KKT also contended that Darryl engaged in business in Texas although he did not live in or maintain a regular place of business in Texas. KKT recognized that neither Smartwise nor the Chens were Texas residents.

Smartwise and the Chens filed a verified special appearance, challenging the trial court's personal jurisdiction over them because none of them were Texas residents and because they did not have sufficient minimum contacts with Texas to confer jurisdiction on Texas courts. *See* Tex. R. Civ. P. 120a(1). KKT responded to Smartwise and the Chen's jurisdictional arguments and alleged that KKT, Optima, and Smartwise had hired Emergo Group, an Austin, Texas company, to assist in obtaining FDA approval for Optima's medical device. They

3

further alleged that to "gain FDA approval, [KKT, Optima, and Smartwise] met numerous times in Texas, including DFW Airport which is located in Tarrant County, Texas." The Chens then filed affidavits in which they individually yet uniformly stated that they had not participated in the airport meetings or Optima's quest for FDA approval:

> I can only assume (but I do not personally know) that the meetings at DFW Airport referenced by [KKT] were a part of that FDA submission/approval process.[2] What I do know, however, is that neither SmartWise nor its owner (Monica) nor its directors (Monica, Darryl and [Salena]) had any involvement in Optima's FDA submission/approval process. I am equally certain that the contract made the basis of the present lawsuit filed in Tarrant County, Texas, has nothing to do with that FDA submission, again noting that none of us Chens nor SmartWise had any involvement with that FDA application. That possible technology was unquestionably one of the motivations for SmartWise investing in Optima, but again, SmartWise had no involvement in the FDA submission/approval process. To be very clear, neither Monica Chen, Darryl Chen, nor [Salena Chen] attended any of the meetings at DFW Airport regarding Optima's FDA approval process. More broadly, none of us three were involved in any such FDA submission/approval meetings, regardless of location – be it DFW Airport or otherwise. Optima personnel were the ones pursuing the FDA approval, not us Chens and not SmartWise.

KKT then filed an amended response and objected to the affidavits because the Chens failed to establish their personal knowledge based on their admissions that they had "no personal knowledge of the FDA meetings, but conveniently affiants are later able to deny having involvement with the FDA meetings." In short, KKT argued that because the Chens stated "but I do not

---

[2]We will refer to these sentences in the affidavits as the "'I assume' sentences."

4

personally know" in the "I assume" sentences, the entirety of the affidavits should be struck based on a lack of personal knowledge. KKT also contended in its amended response that Smartwise and the Chens were subject to personal jurisdiction in Texas based on their sufficient minimum contacts with Texas, mainly based on Optima's contract with Emergo Group, the pending FDA approval for Optima's diagnostic device, and the contractual consent to jurisdiction contained in the governance clause.

The trial court held a hearing on Smartwise and the Chens' special appearance and on KKT's objections on September 25, 2014. The trial court sustained in part KKT's objections and struck the "I assume" sentences from the affidavits. A representative of a consulting company used by KKT, Christopher Chambers, testified that his contract with KKT included a "venue provision," specifying that venue for any disputes between Chambers's company and KKT would be in Tarrant County, Texas. He further affirmed that "anybody that gets FDA approval in the United States has to go through [Emergo Group]." Chambers also testified that "these entities," which he did not specify, met at DFW airport to discuss FDA approval for Optima's medical device and that the device would ultimately be sold in Texas. He further affirmed that KKT does business in Texas.

On October 3, 2014, the trial court entered an order sustaining Smartwise and the Chens' special appearance and dismissing KKT's claims. *See* Tex. R. Civ. P. 120a(3)–(4). No party requested that the trial court enter findings of fact

and conclusions of law. *See* Tex. R. Civ. P. 296. KKT appeals from the trial court's order, arguing that the governance clause was a forum-selection clause and, therefore, acted as Smartwise and the Chens' consent to personal jurisdiction in Texas. KKT also contends that specific jurisdiction in Texas exists based on Smartwise's and the Chens' purposeful contacts with Texas related to KKT's claims against them. KKT additionally argues that the trial court erred by considering the Chens' affidavits.

## II. CONTRACTUAL CONSENT TO JURISDICTION

We first address whether the governance clause was a forum-selection clause that operated to confer personal jurisdiction over Smartwise and the Chens. This was and is KKT's main argument in favor of the exercise of personal jurisdiction. Indeed, the presence of a valid and enforceable forum-selection clause circumvents the need to conduct a due-process and minimum-contacts analysis because such a clause acts as consent to jurisdiction in the contracted-for forum. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589–90, 111 S. Ct. 1522, 1525 (1991);[3] *Baker Hughes Inc. v. Brooks*, 405 S.W.3d 246, 249 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *RSR Corp. v. Siegmund*, 309 S.W.3d 686, 704 (Tex. App.—Dallas 2010, no pet.); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 2182

---

[3]Congress later abrogated the type of forum-selection clause at issue in *Carnival Cruise Lines*; however, the Court's holdings regarding the construction and effect of valid and enforceable forum-selection clauses remain. *See* 46 U.S.C.A. § 30509 (West 2007).

n.14 (1985) (recognizing personal jurisdiction is a waivable right and party may give express or implied consent to jurisdiction under "variety of legal arrangements"). In short, if a party contractually consents to jurisdiction in a particular forum, the trial court's exercise of jurisdiction over that party will not offend due process even in the absence of minimum contacts with Texas. *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 554 (N.D. Tex. 2009); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 792 (Tex. 2005); *RSR Corp.*, 309 S.W.3d at 704; *Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 248 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

## A. STANDARD OF REVIEW

We review the trial court's decision whether to enforce a forum-selection clause for an abuse of discretion. *Brown v. Mesa Distribs., Inc.*, 414 S.W.3d 279, 284 (Tex. App.—Houston [1st Dist.] 2013, no pet.). "Under an abuse of discretion standard, we defer to the trial court's factual determinations if they are supported by the evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). Therefore, to the extent our review involves contractual interpretation of a forum-selection clause, we employ a de novo standard of review. *Phx. Network Techs. (Europe) Ltd. v. Neon Sys., Inc.*, 177 S.W.3d 605, 610 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

7

When we are asked to enforce a forum-selection provision, we first determine whether the contract in fact contains such a clause by using ordinary principles of contract interpretation. *RSR Corp.*, 309 S.W.3d at 700. If such a clause is found, we then determine whether there is any reason to deem it unenforceable, recognizing that the presumption is that the clause is indeed enforceable. *In re Int'l Profit Assocs.*, 274 S.W.3d 672, 675 (Tex. 2009) (orig. proceeding); *RSR Corp.*, 309 S.W.3d at 700.

## B. CHARACTER OF CONTRACTUAL CLAUSE

A forum-selection clause is a contractual arrangement under which parties agree in advance to submit their disputes for resolution within a particular jurisdiction; a choice-of-law clause reflects the parties' intent that the law of a specified jurisdiction will apply to their agreement. *Compare In re AIU Ins. Co.*, 148 S.W.3d 109, 110–14 (Tex. 2004) (orig. proceeding) (discussing enforceability of forum-selection clause), *with DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex. 1990) (op. on reh'g) (discussing choice-of-law clauses), *cert. denied*, 498 U.S. 1048 (1991). *See generally In re AutoNation, Inc.*, 228 S.W.3d 663, 669 (Tex. 2007) (orig. proceeding) (refusing to "superimpose" choice-of-law analysis onto the law regarding forum-selection clauses). The governance clause at issue stated that in the event of "arbitration or disputes," the agreement would be "bound by the courts and rules, as governed in USA." "[W]hen parties agree merely that courts in a particular jurisdiction have venue or are proper venues for disputes and do not provide that

8

the jurisdiction has exclusive venue, the agreement does not establish the parties' consent to the jurisdiction of the courts in question." *Vak v. Net Matrix Solutions, Inc.*, 442 S.W.3d 553, 560 (Tex. App.—Houston [1st Dist.] 2014, no pet.).

The governance clause only establishes a general and very broad situs for a dispute or arbitration—the "courts . . . as governed in USA"—and that the "rules . . . as governed in USA" would bind the agreement. The clause does not indicate that Smartwise and KKT contractually agreed that any lawsuits would be litigated in courts located in Texas, nor does it prohibit litigation in United States jurisdictions other than Texas. *See Sw. Intelecom, Inc. v. Hotel Networks Corp.*, 997 S.W.2d 322, 325 (Tex. App.—Austin 1999, pet. denied); *see also Phx. Network*, 177 S.W.3d at 612 n.6 ("If the parties have not agreed to an *exclusive* forum, then the clause to which they agreed is not a forum-selection clause in the first place."). At most, the governance clause is a choice-of-law provision that attempts to dictate what law would govern any dispute or arbitration. *See Goad v. Hancock Bank*, No. 14-13-00861-CV, 2015 WL 1640530, at *2–3 (Tex. App.—Houston [14th Dist.] Apr. 9, 2015, no pet.) (mem. op.). We conclude that the governance clause is not a forum-selection clause that operates as a presumptively valid contractual consent to personal jurisdiction in Texas by Smartwise and the Chens. We overrule this portion of KKT's first issue.

9

## III. PERSONAL JURISDICTION

We now decide whether the trial court correctly declined to exercise personal jurisdiction over Smartwise and the Chens. KKT argues on appeal that Smartwise and the Chens "initiated extensive and purposeful commercial contacts with Texas substantially related to [KKT's] claims," which justifies the exercise of specific, personal jurisdiction over them.[4] *See Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 840 (Tex. App.—Dallas 2014, no pet.) ("If the claims arise from or relate to the defendant's forum-state contacts, the plaintiff may rely on 'specific jurisdiction,' and the minimum-contact test focuses on the relationship among the defendant, the forum state, and the litigation.").

### A. SCOPE OF REVIEW

In its second issue, KKT argues that the trial court should have excluded the entirety of the Chens' affidavits and not considered them in determining the special appearance because they were not based on personal knowledge. In determining a special appearance, a trial court may consider "the pleadings, any stipulations made by and between the parties, such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony." Tex. R. Civ. P. 120a(3). On appeal, we review all the evidence that

---

[4]Because KKT solely addresses specific jurisdiction, we will do likewise. *See Leonard v. Salinas Concrete, LP*, No. 05-14-01584-CV, 2015 WL 4456200, at *1 n.1 (Tex. App.—Dallas July 21, 2015, no pet. h.).

was properly before the trial court on the issue of personal jurisdiction. *See Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 667 (Tex. App.—Fort Worth 2001, no pet.). Here, the trial court considered the entirety of the Chens' affidavits, with the exception of the "I assume" sentences, over KKT's personal-knowledge objections.[5] If that ruling was in error and the trial court should have struck the entirety of the Chens' affidavits, we may not consider them in our review of the trial court's special-appearance determination. *See CMC Steel Fabricators, Inc. v. Red Bay Constructors, Inc.*, No. 14-13-00084-CV, 2014 WL 953351, at *6 (Tex. App.—Houston [14th Dist.] Mar. 11, 2014, no pet.) (mem. op.).

We review a trial court's decision to admit evidence in the context of a special appearance for an abuse of discretion. *Asshauer v. Farallon Capital Partners, L.P.*, 319 S.W.3d 1, 12 (Tex. App.—Dallas 2008, no pet.). To that end, KKT must show that the trial court's failure to exclude the entirety of the Chens' affidavits was, in fact, error and probably resulted in an improper ruling on the special appearance. *See id.*; *see also* Tex. R. App. P. 44.1(a)(1).

Affidavits submitted as evidence in a special-appearance proceeding "shall be made on personal knowledge, shall set forth specific facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify." Tex. R. Civ. P. 120a(3). Each affidavit stated that the affiant had

---

[5]Smartwise and the Chens do not argue on appeal that the trial court erred by striking the "I assume" sentences.

11

"personal knowledge of the facts set forth herein, and they are all true and correct." The affidavits set forth specific jurisdictional facts based on this personal knowledge and, thus, showed that each affiant would be competent to testify to those facts. In asserting that the alleged meetings occurring at the DFW airport concerned obtaining FDA approval for Optima's diagnostic device, each affiant stated this was an assumption and that he or she did not have personal knowledge of the purpose of the alleged meetings. KKT has pointed to no authority supporting its argument that a single statement in an affidavit that is based on an assumption vitiates the entire affidavit and renders every statement insufficiently based on personal knowledge. *Cf. EOG Res., Inc. v. Wall*, 160 S.W.3d 130, 134–35 (Tex. App.—Tyler 2005, no pet.) (recognizing summary-judgment affidavit's proponent may cure affidavit if trial court strikes portions of affidavit for violation of personal-knowledge requirement). Indeed, the trial court specifically noted that, with the exception of the "I assume" sentences, the affidavits were explicitly based on the affiants' personal knowledge. In the absence of such authority, we cannot conclude that the "I assume" sentences rendered the entirety of the Chens' affidavits inadmissible under rule 120a(3) when the remainder of the affidavits provided facts supporting the affiants' assertions of their personal knowledge of all other averments. The trial court did not err by failing to strike the entirety of the Chens' affidavits, and we overrule KKT's second issue. We will consider the Chens' affidavits, with the exception of

the "I assume" sentences, in our review of the trial court's special-appearance determination.

## B. STANDARD OF REVIEW

### 1. Appellate Prism

The standards of review and the burdens of proof applicable to our review of a trial court's ruling on a special appearance are well established. We determine whether a trial court has personal jurisdiction over a defendant under a de novo standard. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Fish v. Tandy Corp.*, 948 S.W.2d 886, 891–92 (Tex. App.—Fort Worth 1997, writ denied). A plaintiff has the initial burden to plead sufficient allegations to bring a nonresident within the provisions of the Texas long-arm statute. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). Once a plaintiff sufficiently pleads such jurisdictional allegations, the burden shifts to the defendant to negate the bases of personal jurisdiction asserted by the plaintiff. *Kelly*, 301 S.W.3d at 658; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007).

In determining whether the nonresident defendant sufficiently negated the pleaded bases for personal jurisdiction, the trial court frequently must resolve questions of fact. *BMC Software*, 83 S.W.3d at 794. While we review de novo the trial court's legal conclusion that personal jurisdiction does not exist, any findings of fact supporting the conclusion are reviewed for factual and legal

13

sufficiency.  *Id.*  Because the trial court did not enter findings of fact and conclusions of law, we infer that the trial court made all fact findings that have support in the record and that are necessary to uphold the ruling.[6]  *See CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.*, 222 S.W.3d 889, 894 (Tex. App.—Dallas 2007, pets. denied) (op. on reh'g); *see also Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 794–95.  If the trial court's inferred findings are supported by sufficient evidence, we must decide as a matter of law whether those facts negate all bases for personal jurisdiction.  *BMC Software*, 83 S.W.3d at 794.

### 2.  Long-Arm Statute and Due Process

A special appearance challenges the trial court's personal jurisdiction over a defendant.  Texas courts may not exercise personal jurisdiction over a nonresident defendant unless federal due process requirements and the Texas long-arm statute are satisfied.  Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2015); *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 412–13 & n.7, 104 S. Ct. 1868, 1871 & n.7 (1984).  The Texas long-arm statute and the requirements of due process are coextensive; thus, the statute is satisfied if the exercise of personal jurisdiction comports with federal due process.  *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*,

---

[6]Any statements made by the trial court at the special-appearance hearing are not the equivalent of findings of fact or conclusions of law.  *See Amend v. Watson*, 333 S.W.3d 625, 628 n.2 (Tex. App.—Dallas 2009, no pet.).

14

815 S.W.2d 223, 226 (Tex. 1991). Federal due process is satisfied if (1) the nonresident defendant has "minimum contacts" with Texas and (2) the exercise of personal jurisdiction over the nonresident defendant does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Office of Unemp't Comp. & Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945).

## C. APPLICATION

### 1. Sufficient Pleading Invoking Long-Arm Statute

We are to determine first whether KKT met its initial burden to plead sufficient allegations to bring Smartwise and the Chens—all undisputedly nonresidents—within the provisions of the Texas long-arm statute, without reaching the merits of those allegations. *See Kelly*, 301 S.W.3d at 658. Thus, KKT was required to plead a "connection between the defendants' alleged wrongdoing and the forum state." *Id.* at 655. Here, KKT alleged that Monica bought a 10% ownership interest in Optima, KKT's parent company, based on the pending FDA approval for the diagnostic device[7] and that Smartwise and the Chens could reasonably anticipate that FDA approval would result in Smartwise, Optima, and KKT "offering for [sale] and selling the [diagnostic] device throughout the United States[,] which includes the state of Texas." KKT also

---

[7]KKT repeatedly asserts that Monica owned 10% of Optima; but the evidence shows that Smartwise owned 10% of Optima, which KKT recognizes in its brief.

15

alleged that Smartwise, Optima, and KKT contracted with Emergo Group, located in Austin, Texas, "to get FDA approval of their devices" and met in Texas "numerous times" to discuss the FDA approval. Finally, KKT alleged that Darryl, although not a resident, conducted business in Texas.

Smartwise and the Chens do not argue that KKT failed to plead sufficient allegations justifying the exercise of personal jurisdiction. Therefore, we assume without deciding that KKT met its threshold burden.

## 2. Due Process: Minimum Contacts

Based on KKT's allegations arguably raising the Texas long-arm statute and specific jurisdiction, the burden then shifted to Smartwise and the Chens to negate all pleaded jurisdictional bases and, thereby, establish that the trial court's exercise of personal jurisdiction would violate their rights to due process. *Retamco*, 278 S.W.3d at 337; *see Schlobohm v. Schapiro*, 784 S.W.2d 355, 356 (Tex. 1990) (recognizing jurisdiction over nonresident supportable if long-arm statute authorizes such jurisdiction and it is consistent with due-process guarantees). Smartwise and the Chens assert that exercising specific jurisdiction over them under the Texas long-arm statute would violate due process because Smartwise's 10% ownership interest in Optima and Optima's attempts to gain FDA approval for its diagnostic device are insufficient to establish Smartwise's or the Chens' minimum contacts with Texas.

When, as here, a plaintiff asserts specific jurisdiction, the minimum-contacts analysis focuses on the relationship between the defendant, the forum,

16

and the litigation. *IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007). Minimum contacts are sufficient when a nonresident defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). In determining purposeful availment, we consider (1) the defendant's own actions but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than "random, isolated, or fortuitous," and (3) whether the defendant sought "some benefit, advantage, or profit" by availing itself of the privilege of conducting business in Texas. *Michiana*, 168 S.W.3d at 785. The nonresident defendant's contacts are considered as a whole and not in isolation, focusing on the quality and not the quantity of the contacts. *Retamco*, 278 S.W.3d at 339; *Guardian Royal*, 815 S.W.2d at 230 n.11.

Purposeful availment alone does not support the exercise of specific jurisdiction unless the defendant's potential liability arises from or relates to the forum contacts. *Guardian Royal*, 815 S.W.2d at 228; *Glencoe Capital Partners II, L.P. v. Gernsbacher*, 269 S.W.3d 157, 167 (Tex. App.—Fort Worth 2008, no pet.). In short, there must be a substantial connection between the defendant's contacts with the forum and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 584.

Here, the Chens stated that neither they nor Smartwise participated in the alleged DFW meetings or had any involvement in the FDA-approval process for

17

Optima's diagnostic device. Monica and Salena have never been to Texas. Darryl was last in Texas in 2012 when he attended the wedding of his wife's relative and visits Texas approximately once a year for his wife's "family gatherings." The Chens and Smartwise have never conducted business in Texas or transacted business with a Texas entity. Smartwise—which acts only through the Chens as its board of directors—had no role in Optima's business affairs. The only Texas contact noted by Smartwise or the Chens is their acknowledgement that they have "done business with corporations who do business on a world scale—and who thus do business in Texas as well." Further, KKT's allegations against Smartwise and the Chens relate to the letter agreement between KKT and Smartwise under which Smartwise basically agreed to market KKT's products in China and assist KKT with regulatory filings in China. No allegations specifically relate to Optima, its contract with Emergo Group, or the alleged meetings in Texas presumably between KKT and Optima about the diagnostic device.

These facts do not establish that Smartwise or the Chens purposefully did some act or consummated some transaction in Texas and suggest nothing more than mere random or fortuitous contacts that cannot confer specific, personal jurisdiction on a nonresident defendant. KKT's attempts to rely on Optima's contacts with Texas are unavailing as our focus is solely on the Texas contacts made by Smartwise or the Chens. *See Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183–84; *see also Suzlon Energy*, 436 S.W.3d at 840–43 (holding nonresident

18

parent company lacked sufficient minimum contacts to exercise personal jurisdiction over it on breach-of-contract claim by subsidiary); *Davey v. Shaw*, 225 S.W.3d 843, 854–55 (Tex. App.—Dallas 2007, no pet.) (holding corporate structure could not be disregarded to confer personal jurisdiction on nonresident corporation, which owned 100% of Texas corporation, absent necessary alter-ego findings of fraud or injustice). Similarly, Chambers's contract with KKT and its venue provision have no bearing on whether Smartwise or the Chens had the requisite minimum contacts with Texas to satisfy due process. Additionally, there is no evidence that KKT's allegations against Smartwise and the Chens regarding the letter agreement are substantially connected to any of Smartwise's and the Chens' alleged, yet tenuous, contacts with Texas, which also defeats the exercise of specific, personal jurisdiction. *See Waller Marine, Inc. v. Magie*, No. 14-14-00181-CV, 2015 WL 1456879, at *4–5 (Tex. App.—Houston [14th Dist.] Mar. 26, 2015, no pet.); *Dresser-Rand Grp., Inc. v. Centauro Capital, S.L.U.*, 448 S.W.3d 577, 586–88 (Tex. App.—Houston [14th Dist.] 2014, no pet.). We conclude that Smartwise and the Chens established that the trial court's exercise of personal jurisdiction over them would violate their rights to due process based on the lack of evidence of sufficient minimum contacts. *See generally* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (long-arm statute delineating under what circumstances a nonresident may be considered to conduct business in Texas for personal-jurisdiction purposes in a suit on business transaction or tort). As a result, the facts before the trial court negated

19

all bases for jurisdiction asserted by KKT.  We overrule the remaining portion of KKT's first issue.[8]

## IV.  CONCLUSION

Because the record supported the trial court's inferred findings and conclusion that exercising specific, personal jurisdiction over Smartwise and the Chens would offend due process based on the absence of minimum contacts, we affirm the trial court's order.  *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED:  August 25, 2015

---

[8]Because we have found there was insufficient evidence of Smartwise's or the Chens' minimum contacts with Texas, we need not address whether the exercise of personal jurisdiction would comport with traditional notions of fair play and substantial justice.  *See, e.g.*, Tex. R. App. P. 47.1; *Wilson v. Belin*, 20 F.3d 644, 650 n.7 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994).

20